**Valentin MORENO, Jr., Appellant,**

v.

**The STATE of Texas, Appellee.**

**Nos. 13–97–335–CR, 13–97–336–CR.**

Court of Appeals of Texas, Corpus Christi.

Aug. 31, 1999.

Mark Alexander, McAllen, for appellant.

Rene Guerra, District & County Atty., Rolando Garza, Asst. Dist. Atty., Edinburg, for State.

Before Justices HINOJOSA, YAÑEZ, and RODRIGUEZ.

## O P I N I O N

Opinion by Justice HINOJOSA.

In Cause No. 13–97–335–CR,[1] a jury found appellant, Valentin Moreno, Jr., guilty of the offense of capital murder[2] and assessed his punishment at life imprisonment. The jury also found appellant guilty of the offense of attempted capital murder in Cause No. 13–97–336–CR[3] and assessed his punishment at life imprisonment and a $10,000 fine. By sixteen points of error, appellant contends: (1) he received ineffective assistance of counsel, (2) the trial court failed to grant him a new trial, (3) the trial court allowed the State to put on perjured testimony, (4) the trial court allowed improper jury argument, backdoor hearsay, and prejudicial photographs, (5) there was double jeopardy in the sentencing, (6) the trial court erred in allowing the jury to deliberate with only eleven jurors, (7) the court's charge referenced an acquitted co-defendant, (8) the

charge was misleading as to parole, (9) the trial court allowed irrelevant gang evidence during the punishment phase, and (10) the trial court erroneously admitted a juvenile judgment into evidence. We affirm the judgment and sentence in Cause No. 13–97–335–CR and vacate the judgment and sentence in Cause No. 13–97–336–CR.

### A. STATEMENT OF FACTS

On December 15, 1995, appellant was seen by witnesses attending a party at the house of Juan Trevino in Lopezville. According to witnesses, the Trevino residence was a hangout for members of a gang known as the Tri–City Bombers. When a blue truck drove by the house and "burned rubber," four individuals, including appellant, jumped into Juan Trevino, Jr.'s car to find the truck. Yvonne Gonzalez, Missail Ramirez, and Raul Gutierrez were at a convenience store using a pay telephone. Upon arriving at the convenience store, appellant and the three other individuals were seen exiting the vehicle with weapons. The four individuals then proceeded to fire eighteen rounds into Raul Gutierrez's truck. Missail Ramirez and Raul Gutierrez died from gunshot wounds, and Yvonne Gonzalez was wounded in the leg by bullet fragments.

### B. MOTION FOR NEW TRIAL

By his third point of error, appellant complains the trial court erred in refusing to grant him a new trial. Appellant contends he should have been granted a new trial because he discovered new witnesses who exculpated him.

A trial court may, in its discretion, grant a new trial based on newly discovered evidence. *Freeman v. State*, 838 S.W.2d 772, 778 (Tex.App.—Corpus Christi 1992, pet. ref'd). New trials based

1. Trial court Cause No. CR–517–96–F.

2. TEX. PEN.CODE ANN. §§ 15.01, 19.03 (Vernon 1994).

3. Trial court Cause No. CR–1497–96–F.

on newly discovered evidence are not favored, *Drew v. State*, 743 S.W.2d 207, 225 (Tex.Crim.App.1987), and denial of the request will not be overturned on appeal absent a showing that the trial court abused its discretion. To establish an abuse of discretion, the defendant must show that: (1) the evidence was unknown to him before trial; (2) his failure to discover it was not due to his want of diligence; (3) it is probably true and its materiality is such as will probably bring about a different result upon a new trial; and (4) it is competent, not merely cumulative, corroborative, collateral, or impeaching. *Drew*, 743 S.W.2d at 226; *Sawyer v. State*, 778 S.W.2d 541, 545 (Tex.App.—Corpus Christi 1989, pet. ref'd); *Sweeten v. State*, 686 S.W.2d 680, 683 (Tex.App.—Corpus Christi 1985, no pet.).

■ When addressing the third requirement, the new evidence must be shown to probably be true in order to possess sufficient materiality. *Oestrick v. State*, 939 S.W.2d 232, 236 (Tex.App.—Austin 1997, pet. ref'd) (citations omitted). "The 'probably true' requirement simply means the trial court must determine that 'the whole record presents no good cause to doubt the credibility of the witness whose testimony constitutes new evidence, either by reason of the facts proven at the trial or by the controverting affidavits on the motion, or otherwise.'" *Id.* (citing *Jones v. State*, 711 S.W.2d 35, 37 n. 4 (Tex.Crim.App.1986) and *Ashcraft v. State*, 918 S.W.2d 648, 653 (Tex.App.—Waco 1996, pet. ref'd)).

■ Given appellant's claims of ineffective assistance of counsel, which we will discuss later, we will assume, *arguendo*, that he has met the first two criteria. We now consider the new testimony in light of the third requirement. First, we consider the alleged recanted testimony of Beatrice Trevino. Generally, when a witness testifies in a motion for new trial that he or she testified falsely in the trial, the trial court should grant the motion for new trial. *Williams v. State*, 375 S.W.2d 449, 451 (Tex.Crim.App.1964). An exception exists

where evidence is produced at the new trial hearing that the recantation is not credible or is pressured. *Dillard v. State*, 550 S.W.2d 45, 52 (Tex.Crim.App.1977); *Villarreal v. State*, 788 S.W.2d 672, 673 (Tex.App.—Corpus Christi 1990, pet. ref'd).

■ The trial court must examine the evidence presented at trial and must consider the truthfulness of the evidence presented in favor of the motion for new trial. *Dillard*, 550 S.W.2d at 52. The credibility of the witnesses and the probable truth of the new evidence is primarily a determination for the trial court. *Etter v. State*, 679 S.W.2d 511, 515 (Tex.Crim.App.1984); *Dillard*, 550 S.W.2d at 52; *Williams v. State*, 504 S.W.2d 477, 483 (Tex.Crim.App.1974). "Even where a recantation of testimony is made by the principal witness, a trial court is entitled to disbelieve that later statement and accept the earlier statement as true." *Hoyos v. State*, 951 S.W.2d 503, 511 (Tex.App.—Houston [14th Dist.] 1997, aff'd, 982 S.W.2d 419 (Tex.Crim.App.1998); *Banda v. State*, 727 S.W.2d 679, 682 (Tex. App.—Austin 1987, no pet.). As in all reviews of situations involving witness credibility, the judge is able to determine the credibility of the witnesses by observation in a way that the appellate court cannot duplicate from a cold record. *Driggers v. State*, 940 S.W.2d 699, 709 (Tex. App.—Texarkana 1996, pet. ref'd) (op. on reh'g).

■ Beatrice Trevino testified at the hearing on the motion for new trial that she was not sure of the identification of appellant that she gave at the trial and that she was confused as to the identity of the person that she saw get into the vehicle involved in the shooting. She stated that the identification problem stemmed from "a problem in nicknames." She stated, "I think I've confused two Cats that I know of, the name, as the nickname." It is reasonable that the judge did not feel her confusion was credible. Beatrice made an in-court identification of appellant and tes-

tified that she knew who he was. When the identification is weighed against this new alleged confusion, the trial judge did not abuse his discretion in determining that the probable truth of the new evidence did not warrant a new trial.

■ Secondly, the judge could reasonably have doubted the materiality of testimony of the individuals at the party[4] because they all seemed to say that they were only at the party at the Trevino house for fifteen to thirty minutes and none of them saw appellant there, nor did they see him get in the car involved in the shooting.[5]

Thirdly, appellant presented the testimony of Juan Trevino, the father of two of the individuals alleged to have committed the crime with appellant, in which Trevino exculpated all those who have been named as participants in this crime.

Next, appellant presented an eyewitness, Tito Garza, who claimed he had known appellant for a couple of years, and testified he saw the faces of the perpetrators from his house across the street from the scene of the crime, and that appellant was not involved in the crime. This is in direct controversy with the trial testimony of Raul Guerrero, who testified he was present at the scene of the shooting and saw appellant with a gun. Guerrero testified he had known appellant since elementary school. Tito also testified that appellant's aunt came to him and asked him to make a statement and then took him to make the statement. When the judge weighed the trial testimony of Raul Guerrero with Tito's testimony, it is reasonable that he doubted Tito's credibility and found that his testimony was probably not true.

The final witness, Evelyn Gomez, was simply an attempt by the defense to im-

peach the testimony of Yvonne Gonzalez. Evelyn's testimony was used to establish that Yvonne was not sure who shot her. Evelyn testified she saw Yvonne at the courthouse and that she asked Yvonne "if the people on trial were the ones that actually shot her," and Yvonne replied, "no, that she wasn't sure but that she had enough money to pay whoever so that they would go to jail." This could reasonably be interpreted as Yvonne stating that she was not sure which one of the five people, that she identified as being the shooters, actually shot her. When Evelyn's testimony is compared to the lengthy testimony that Yvonne gave at the trial concerning the incident, it is reasonable that the judge found Evelyn's testimony as a tool used in an attempt to impeach Yvonne and further found the testimony did not present sufficient cause to doubt Yvonne's testimony.

Finally, appellant presented an affidavit by Rick Trevino, the brother of two of the individuals alleged to have committed the shooting with appellant. In the statement, Rick Trevino exculpated his brothers by stating that Joe Garcia told him that he [Joe], Ozie, and Gizmo did the shooting, and that Juan Trevino, Jr. was just driving the car, and Jesus Trevino was not with them. The affidavit can reasonably be considered false since Rick acknowledged he is a fellow member of the Tri–City Bombers, the gang that appellant is a member of, and it appears that Juan Jr. and Jesus Trevino are also members. The evidence presented at trial concerning the participation of Juan Jr., Jesus, and appellant in the shooting presents cause to doubt the affidavit and to believe that it is merely an attempt by Rick Trevino to protect his brothers.

After reviewing the evidence, we hold the trial judge did not abuse his discretion

4. Julio Bazan, Steve Segovia, Gabriel Benavidez, and Jose Borrego.

5. The judge was also aware of the testimony of Beatrice Trevino at the hearing on the motion for a new trial, in which she agreed

that "the Trevino residence (her brother's house) was a hang out place by the Tri–City Bombers" and "most of the people that [she] saw there on that night were members of the Tri–City Bombers."

by denying appellant's motion for a new trial. Appellant's third point of error is overruled.

## C. PERJURED TESTIMONY

■ By his fourth point of error, appellant complains the State was allowed to put on testimony that it believed was perjured. Appellant contends the State had accused its witness, Beatrice Trevino, of lying at a previous trial; thus, by allowing her to testify in this trial, the State was knowingly presenting perjured testimony.

■ The trier of fact—not the appellate court—is free to accept or reject all or any portion of any witness's testimony. *Adelman v. State,* 828 S.W.2d 418, 421 (Tex.Crim.App.1992). The jury is the exclusive judge of the credibility of the witnesses and of the weight to be given their testimony. *Penagraph v. State,* 623 S.W.2d 341, 343 (Tex.Crim.App.1981).

Beatrice Trevino, an aunt of Juan Trevino and Jesus Trevino, lives across the street from the house where the party was occurring the night of the shooting. She testified at trial that after a blue pick-up truck passed by the house and burned rubber, Juan Trevino, Jr., Joe Garcia, appellant, and an unknown fourth person got into Juan's car with weapons. After the vehicle left, Ms. Trevino heard some gunshots. At trial, Ms. Trevino identified appellant in court. On cross-examination, appellant questioned Ms. Trevino about a prior statement that she had made in the case. He referred to her response, "I'm not really sure," when she was asked who had gotten into Juan, Jr.'s car, and her statement that she was "not a hundred percent sure who the people were that got in the vehicle." Appellant also brought up in cross-examination that the State accused Ms. Trevino of lying for her nephew, Jesus Trevino. On re-direct, the State clarified Ms. Trevino's testimony by establishing that the last time she testified, she stated that Jesus Trevino was *not* the fourth person that got into the car. This is the testimony that caused the disagree-

ment. Ms. Trevino further agreed that she does not know the identity of the fourth person.

It appears that the alleged discrepancies in Ms. Trevino's testimony are based simply on her inability to identify the fourth person that got into the vehicle, not on her inability to identify appellant as an individual in the vehicle. The State's previous allegations against Ms. Trevino as a liar concerned her omission of Jesus Trevino's participation, they did not concern appellant. We hold it was the jury's place to accept or reject any of Ms. Trevino's testimony. Appellant's fourth point of error is overruled.

## D. IMPROPER ARGUMENT

By his fifth point of error, appellant complains the trial court erred in allowing the State to argue over defense objections. Appellant contends the State made an improper closing argument during the guilt/innocence phase of the trial because the prosecutor argued outside the record and made an improper plea for law enforcement.

■ Proper jury argument must fall within one of four categories: (1) summary of the evidence; (2) reasonable deduction from the evidence; (3) in response to argument of opposing counsel; and (4) plea for law enforcement. *Borjan v. State,* 787 S.W.2d 53, 55 (Tex.Crim.App.1990); *Modden v. State,* 721 S.W.2d 859, 862 (Tex. Crim.App.1986); *Alejandro v. State,* 493 S.W.2d 230 (Tex.Crim.App.1973).

■ The State may not use its closing argument to admit evidence which is outside the record and prejudicial to the accused. *Borjan,* 787 S.W.2d at 57 (citations omitted). "Reference to facts that are neither in evidence, nor inferable from the evidence is improper." *Id.* (citations omitted).

■ The first argument that appellant claims was improper is when the prosecutor argued:

Raul Guerrero is in a position to see where he is at. The fact that Yvonne saw [appellant] with a mask or with a bandana over his mouth doesn't mean that by the time he gets to the other end of the store that bandana is off his face. Use common sense because just the fact that one person saw him over here with something on his face and its not over here[.]

Appellant's trial attorney objected to the argument concerning the bandana as being outside the record and was overruled by the court.

Appellant's argument is without merit because bandanas were mentioned in Yvonne Gonzalez's testimony. Yvonne testified on cross-examination as follows:

Q. Didn't you tell them that three of them had beanies with bandanas over their faces?

A. Yes, I did tell them.

Q. Okay. And that all you saw was the eyes on three of them. Didn't you tell them that?

A. Exactly. He was one of them (indicating [to Appellant]).

We hold the prosecutor's argument about the bandana was proper because Yvonne Gonzalez had testified about its existence.

■ Secondly, appellant claims the prosecutor made an improper argument concerning Beatrice Trevino. The prosecutor argued:

Beatrice Trevino lives in Lopezville and she knows the Defendant, and if the Defendant can go chase a pick-up truck, dark blue in color, and shoot and kill them because they burned rubber in front of a house, and the first navy blue pick-up truck, they find they go and confront the people and shoot eighteen rounds into that pick-up truck, imagine what they can do to Beatrice Trevino who they would consider a snitch.

■ "A prosecuting attorney is permitted in his argument to draw from the facts in evidence all inferences which are reasonable, fair and legitimate, but he may not use the jury argument to get before the jury, either directly or indirectly, evidence which is outside the record." *Borjan*, 787 S.W.2d at 57; *Jordan v. State*, 646 S.W.2d 946, 948 (Tex.Crim.App.1983). "It is well settled that the prosecutor may argue his opinions concerning issues in a case so long as the opinions are based on the evidence in the record. *Barnard v. State*, 730 S.W.2d 703, 718 (Tex.Crim.App. 1987). *See also, Contreras v. State*, 838 S.W.2d 594, 606 (Tex.App.—Corpus Christi 1992, pet. ref'd). In order to assess the validity of appellant's claims, therefore, we must first look to the record to determine if any evidence was presented which would support the prosecution's statement.

The following evidence, supporting the statement made by the prosecutor, is found in the record: (1) the Trevino house was a gang hangout; (2) the four individuals that Ms. Trevino saw get into the vehicle went after a blue pick-up truck because it "burned rubber" in front of their house; (3) the four individuals took weapons with them; (4) eighteen rounds were fired into the truck; (5) Missail Ramirez and Raul Gutierrez died from gunshot wounds, and Yvonne Gonzalez was wounded in the leg by bullet fragments. The inference set forth by the prosecutor is that appellant is a violent individual. The prosecutor is simply emphasizing the extreme nature of this shooting and the fact that two individuals were killed for allegedly "burning rubber" in front of a house. The prosecutor's further comment about the safety of Beatrice Trevino is simply an inference based upon the dangerous nature of appellant. The prosecutor is not stating that appellant threatened Beatrice Trevino, but rather is making an inference based upon the risk Beatrice Trevino is taking in testifying, considering appellant's dangerous nature. We hold the prosecutor's comments are reasonable inferences from the evidence presented at trial. Appellant's fifth point of error is overruled.

### E. HEARSAY

 By his sixth point of error, appellant contends the State was allowed to admit backdoor hearsay into evidence. Appellant argues the following testimony was erroneously admitted:

Prosecutor: Now during your investigation, were you able to ascertain roughly where the firearms may be at?

Witness: We got several calls saying—

Defense attorney: Judge this is hearsay.

Prosecutor: Just based on your investigation, sir.

Witness: Okay. Based on my investigation is that the weapons were at a canal—somewhere at a canal.

Prosecutor: Okay. And were you, during that investigation, able to determine which canal it was?

Witness: No, ma'am.

Appellant did make an initial objection, but he did not obtain a ruling from the court. *See* TEX.R.APP. P. 33.1(a)(2). When the prosecutor rephrased the question, appellant did not renew his objection. Because there was no objection, we hold appellant has not preserved this complaint for our review and has waived any error. *See Marin v. State,* 851 S.W.2d 275, 279 (Tex.Crim.App.1993), *overruled on other grounds, Matchett v. State,* 941 S.W.2d 922, 928 (Tex.Crim.App.1996). Accordingly, we overrule appellant's sixth point of error.

### F. PREJUDICIAL PHOTOGRAPHS

By his seventh point of error, appellant contends the trial court erred in admitting prejudicial photographs of the wounds sustained by the victims.

 Texas Rule of Evidence 403 provides that "although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence." "The admissibility of photographs over any challenge is within the sound discretion of the trial judge." *Sonnier v. State,* 913 S.W.2d 511, 518–19 (Tex.Crim.App.1995) (citations omitted).

 The photographs that appellant objects to are the photographs taken of the bodies of Raul Guerrero and Missail Ramirez. The photographs were presented at trial during the testimony of Dr. Fulgencio Salinas, the forensic pathologist who performed the autopsies on the victims, and also during the testimony of Joel Castro, the identification technician of the Sheriff's Department who attended the autopsy to collect any possible evidence. The photographs were used to show the wounds that were ascertained during the autopsy and the causes of death.

 "Autopsy photographs are relevant to show the identity of the victim and the manner and means of death." *Williams v. State,* 937 S.W.2d 479, 488 (Tex.Crim.App.1996); *Penry v. State,* 903 S.W.2d 715, 751 (Tex.Crim.App.1995). These photographs are admissible under rule 403 even if they merely corroborate other kinds of evidence. *Williams,* 937 S.W.2d at 488; *Cohn v. State,* 849 S.W.2d 817, 820–21 (Tex.Crim.App.1993).

We hold the trial court did not abuse its discretion in admitting the photographs. Appellant's seventh point of error is overruled.

### G. ELEVEN JURORS

 By his ninth and tenth points of error, appellant contends the trial court erred in proceeding with only eleven jurors at the guilt/innocence phase and the punishment phase of the trial.

After the jury received the court's charge, the judge received the following note from a juror:

Judge, I cannot stop thinking about the defendant's killer eyes, prolonged stare

at me during the trial. It is having a strong effect as to how I view the evidence.

The exact actions taken by the judge are in controversy. The judge brought the parties' counsel together. According to the appellant's Bill of Exception, the judge stated:

> *I will not grant a mistrial on this.* If the defense wants, I will excuse this juror for bias and I will keep the other jurors deliberating. It is your choice. Let me know what you want to do." (Emphasis added).

According to the State's Bill of Exception, the judge stated:

> *It is too early to consider a mistrial* or to excuse the juror. However, I will consider excusing the juror if both sides agree." (Emphasis added).

The record establishes appellant requested that the "juror be excused on the basis that he has already been receiving other evidence, that it's something outside of what's in the record and that which he is to be considering." Appellant testified that he had been informed of the note and that he was in full agreement to excuse the juror and have the other eleven continue to deliberate. Neither the appellant nor the State made any objection to the action taken by the trial judge.

Since the trial judge was not given the opportunity to approve either bill before filing, or to make whatever corrections he felt were necessary, as established by the lack of his signature on either bill, we hold the error set forth in the bills has not been preserved for our review. *See* Tex.R.App. P. 33.2(c).

■ We note that in his testimony, appellant requested the dismissal of the juror and asked the trial court to proceed with eleven jurors. Accordingly, we hold appellant waived his right to a jury of twelve members. *See Roberts v. State,* 957 S.W.2d 80, 80 (Tex.Crim.App.1997) (citing *Hatch v. State,* 958 S.W.2d 813 (Tex.Crim.

App.1997)). Appellant's ninth and tenth points of error are overruled.

## H. ACQUITTED CO-DEFENDANT

■ By his eleventh, thirteenth and fourteenth points of error, appellant contends the trial court erred in allowing and disallowing references to an acquitted co-defendant. Specifically, appellant claims the trial court erred in: (1) allowing a reference to an acquitted co-defendant in the jury's charge; (2) failing to inform the jury of the status of the acquitted co-defendant; and (3) not allowing appellant to put on evidence of the acquittal of the co-defendant.

■ "It is not permissible to show that another non-testifying person, who has been jointly or separately indicted for the same offense as the accused, has been convicted or acquitted." *Miller v. State,* 741 S.W.2d 382, 389 (Tex.Crim.App.1987).

■ In point eleven, appellant argues that the inclusion of references to Jesus Trevino, an acquitted co-defendant, violates collateral estoppel. Collateral estoppel, as embodied in the Fifth Amendment guarantee against double jeopardy, means that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit. *Hunt v. State,* 764 S.W.2d 839, 840 (Tex.App.—Corpus Christi 1989, no pet.) (citing *Ashe v. Swenson,* 397 U.S. 436, 443, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970) and *Dedrick v. State,* 623 S.W.2d 332, 336 (Tex.Crim.App.1981)).

The parties involved in the co-defendant's case are not involved in this case. Jesus Trevino was the defendant in the previous case, and appellant is the defendant in this case. Thus, appellant's argument is without merit. Also, if the court were to alter the charge so as to delete the reference to the co-defendant, it would implicitly reference the acquittal of the co-defendant, and this is not allowed. Appellant's eleventh point of error is overruled.

In points thirteen and fourteen, appellant argues the trial court erred by not informing the jury of the status of Jesus Trevino, the acquitted co-defendant, and by not allowing appellant to introduce evidence at the trial concerning the acquittal. It is impermissible to reference the conviction or acquittal of a co-defendant. Appellant's thirteenth and fourteenth points of error are overruled.

## I. JURY CHARGE ON PUNISHMENT

By his twelfth point of error, appellant complains the trial court erred in overruling his objections to the court's charge concerning parole and the second special issue. Appellant contends the charge on parole was misleading because the jury should have been informed as to when parole eligibility would occur if a life sentence for capital murder were imposed, and question two of the special issues should not have been included.[6] Specifically, appellant argues that the attempted capital murder jury instruction states that life is the equivalent of thirty years and the charge remains silent on parole in the capital murder jury instruction, which, in turn, mistakenly implies that life means thirty years in the capital murder case as well. We interpret this to mean that appellant is arguing that by giving him a life sentence for the capital murder charge, the jury really only meant to give him a thirty year sentence.

 In this case, there were two charges to the court on punishment. The first charge concerned the assessment of punishment on the jury's finding of guilt for the attempted capital murder. As a first degree felony, article 37.07, § 4(b) of the code of criminal procedure controls. See TEX.CODE CRIM. PROC. ANN. art. 37.07, § 4(b) (Vernon Supp.1999). The court's charge stated:

Under the law applicable to this case, if the defendant is sentenced to a term of imprisonment, he will not become eligible for parole until the actual time served equals one-half of the sentence imposed or 30 years, whichever is less, without consideration of any good conduct time he may earn. If the defendant is sentenced to a term of less than four years, he must serve at least two years before he is eligible for parole. Eligibility for parole does not guarantee that parole will be granted.

It cannot accurately be predicted how the parole law and good conduct time might be applied to this defendant if he is sentenced to a term of imprisonment because the application of these laws will depend on decisions made by prison and parole authorities.

You may consider the existence of the parole law and good conduct time. However, you are not to consider the extent to which good conduct time may be awarded to or forfeited by this particular defendant. You are not to consider the manner in which the parole law may be applied to this particular defendant.

The second charge concerned the assessment of punishment on the jury's finding of guilt for the capital murder. Article 37.071 sets forth the sentencing procedure in a capital case. See TEX.CODE CRIM. PROC. ANN. art. 37.071 (Vernon Supp.1999). It does not instruct the court to charge on parole. The charge merely states:

During your deliberations, you are not to consider or discuss any possible action of the Board of Pardons and Paroles or of the Governor, or how long the defendant would be required to serve to satisfy a sentence of life imprisonment.

6. Special Issue No. 2 states:
Do you find from the evidence beyond a reasonable doubt that [Appellant] actually caused the deaths of Raul Gutierrez and Missail Ramirez, the deceaseds, on the oc-

casion in question, or if he did not actually cause deceaseds' death, that he intended to kill the deceaseds or another, or that he anticipated that a human life would be taken?

Article 37.07 permits jury instructions on parole laws at punishment in noncapital cases. TEX.CODE CRIM. PROC. ANN. art. 37.07, § 4 (Vernon Supp.1999). Article 37.071, which governs sentencing in capital cases, remains silent on the issue. TEX. CODE CRIM. PROC. ANN. art. 37.071 (Vernon 1999). The court of criminal appeals has stated, "[w]e have, rightly or wrongly, interpreted Article IV, § 11 [of the Texas Constitution], as prohibiting, in the absence of legislative action, jury instructions regarding parole law in capital cases." *Walbey v. State,* 926 S.W.2d 307, 313 (Tex. Crim.App.1996); *see Elliott v. State,* 858 S.W.2d 478, 489 n. 7 (Tex.Crim.App.1993) (Texas Constitution prohibits instruction as to parole laws in capital cases).

The trial court in this case merely followed the procedure set out in the code of criminal procedure. While it is true that the jury was informed as to the eligibility for parole in the attempted capital murder case, the charge also stated that eligibility did not guarantee parole. We hold the charge was not misleading.

Secondly, appellant contends that special issue no. two should not have been included because it adds nothing to the charge and by asking "whether or not the accused anticipated that a human life would be taken, that contemplates even something as low as felony murder." This argument is without merit because the code of criminal procedure requires that the trial court submit this special issue to the jury if there is a law of parties situation, so that the jury can focus on the actions of the defendant and not on his co-defendants. *See* TEX.CODE CRIM. PROC. ANN. art. 37.071, § 2(b) (Vernon Supp.1999). Appellant's twelfth point of error is overruled.

## J. IRRELEVANT GANG EVIDENCE

By his fifteenth point of error, appellant complains the trial court erred by admitting irrelevant gang evidence during the punishment phase of the trial. Appellant contends the evidence is not relevant to any issue in the case.

The gang evidence was presented in witness testimony as follows:

(1) James Torlene, assistant principal at appellant's high school, testified to the problems he had with appellant—insubordination, vandalism, and fighting—and in relation to the fighting Torlene mentioned appellant's membership in the Tri–City Bombers and its fights with rival gangs;

(2) Rogelio Rodriguez, assistant principal at appellant's high school, testified concerning appellant's aggressive nature and the fights he was involved in at school due to his gang affiliation;

(3) Federico Andrade, a security supervisor for the Pharr–San Juan–Alamo School District, testified concerning his personal knowledge of appellant's affiliation with gang-related fights and instigation of riots, that he had personally been assaulted by the gangs, and that appellant had threatened him;

(4) Gerardo Rivera, Captain-in-charge of jail operations in Hidalgo County, testified concerning appellant's membership in the prison gang called the Texas Chicano Brothers, fires set by the gang, and appellant's leadership in the gang; and

(5) Robert Pinale, detention officer with the sheriff's department, testified concerning appellant's threat of a riot if he was not placed in a particular section of the jail.

Article 37.07, § 3(a) of the code of criminal procedure provides that evidence, in accordance with the Texas Rules of Evidence, may be offered "as to any matter the court deems relevant to sentencing, including but not limited to the prior criminal record of the defendant, his general reputation, his character, an opinion regarding his character, the circumstances of the offense for which he is being tried...." TEX.CODE CRIM. PROC.

ANN. art. 37.07, § 3(a) (Vernon Supp. 1999). The procedure for presenting evidence in a capital case is set out in art. 37.071, § 2(a) which provides that: "evidence may be presented by the state and the defendant or the defendant's counsel as to any matter that the court deems relevant to sentence, including evidence of the defendant's background or character of the circumstances of the offense that mitigates against the imposition of the death penalty." TEX.CODE CRIM. PROC. ANN. art. 37.071, § 2(a) (Vernon Supp. 1999).

▇▇▇▇ The trial court has broad discretion in determining admissibility of evidence at the punishment phase of trial. *Cooks v. State,* 844 S.W.2d 697, 735 (Tex. Crim.App.1992). Generally, the jury is entitled to have before it "all possibly relevant information about the individual defender whose fate it must determine." *Id.* (quoting *Jurek v. Texas,* 428 U.S. 262, 276, 96 S.Ct. 2950, 2958, 49 L.Ed.2d 929 (1976)).

"Relevant evidence" is evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. TEX.R. EVID. 401. Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence. Tex.R. Evid. 403.

▇▇▇▇ In keeping with the presumption of the admissibility of relevant evidence, there is a presumption that relevant evidence will be more probative than prejudicial. *Santellan v. State,* 939 S.W.2d 155, 169 (Tex.Crim.App.1997). "Rule 403 requires exclusion of evidence only when there exists a clear disparity between the degree of prejudice of the offered evidence and its probative value." *Jones v. State,* 944 S.W.2d 642, 653 (Tex.Crim.App.1996); *Joiner v. State,* 825 S.W.2d 701, 708 (Tex.

Crim.App.1992). Also, questions of admissibility of evidence under Rule 403 are assigned to the trial court and are reviewable on appeal only for abuse of discretion. *Jones,* 944 S.W.2d at 653; *Coffin v. State,* 885 S.W.2d 140, 149 (Tex.Crim.App.1994).

▇▇▇▇ At the punishment phase of a capital trial, evidence regarding a defendant's character is relevant. *Jones,* 944 S.W.2d at 653 (citations omitted). Gang membership is relevant character evidence and therefore admissible. *See Anderson v. State,* 901 S.W.2d 946, 951 (Tex.Crim.App.1995) (gang membership relevant to show character in non-capital sentencing); *Beasley v. State,* 902 S.W.2d 452, 456 (Tex. Crim.App.1995) (non-capital).

In his concurring opinion in *Pondexter v. State,* 942 S.W.2d 577 (Tex.Crim.App. 1996), Judge Mansfield explained the court of criminal appeals' decisions concerning the admission of gang evidence in *Anderson v. State,* 901 S.W.2d 946 (Tex. Crim.App.1995), and *Beasley v. State,* 902 S.W.2d 452 (Tex.Crim.App.1995). Judge Mansfield stated:

> [the] Court found evidence of gang membership to be admissible at the punishment phase of the defendant's trial as relevant character evidence. We acknowledged that testimony as to gang membership and as to the criminal activities of the gang may have been prejudicial. However, the testimony was not unfairly prejudicial because the jury was only required to determine the defendant's character based on his gang membership and they were not required to determine whether the defendant was guilty of the misconduct or bad acts of the gang. Therefore, we held evidence of gang membership was admissible as character evidence at punishment under Texas Rule of Criminal Evidence 404(c) and Texas Code of Criminal Procedure Article 37.07, Section 3(a).

*Pondexter,* 942 S.W.2d at 589.

▇▇▇▇ While the gang evidence in this case may have been prejudicial, it is

only when there exists a clear disparity between the degree of prejudice of the offered evidence and its probative value that Rule 403 is applicable. In reviewing the record before us, we cannot say the probative value of the gang evidence was substantially outweighed by its prejudice, because the evidence was only used so that the jury could determine appellant's character. We hold the trial court did not err in allowing the testimony of James Tolene, Rogelio Rodriguez, and Federico Andrade that appellant was a discipline problem in high school and was affiliated with the Tri–City Bombers, as probative of appellant's propensity to commit future acts of violence.

■■■ The testimony of Gerardo Rivera and Robert Pinale concerning appellant's gang affiliation while in jail is relevant, and thus, admissible because appellant's affiliation with the Texas Chicano Brothers was "characteristic of his lawless nature and rejection of rehabilitation" while incarcerated. *Hernandez v. State*, 819 S.W.2d 806, 817 (Tex.Crim.App.1991). This testimony concerning appellant's involvement and leadership in a prison gang is relevant to answering the second special issue, whether appellant would commit criminal acts of violence that would constitute a continuing threat to society. Accordingly, the trial court did not err in allowing the testimony of Gerardo Rivera and Robert Pinale. Appellant's fifteenth point of error is overruled.

### K. Juvenile Judgment

By his sixteenth point of error, appellant contends the trial court erred in admitting a document containing a certified judgment of a petition filed against him when he was a juvenile. Appellant argues the trial court should have weighed the probative value against the danger of unfair prejudice.

■■■ Appellant made a rule 403 objection to the document when it was offered in evidence. *See* Tex.R. Evid. 403. Thus, the trial court was required to perform the rule 403 balancing test. *Santellan v. State*, 939 S.W.2d at 173; *Montgomery v. State*, 810 S.W.2d 372, 389 (Tex.Crim.App. 1990). However, it did not need to conduct a formal hearing or even announce on the record that it had mentally conducted this balancing test. *Howland v. State*, 966 S.W.2d 98, 103 (Tex.App.—Houston [14th Dist.] 1998, aff'd, 990 S.W.2d 274 (Tex. Crim.App.1999); *Yates v. State*, 941 S.W.2d 357, 367 (Tex.App.—Waco 1997, pet. ref'd); *Luxton v. State*, 941 S.W.2d 339, 343 (Tex.App.—Fort Worth 1997, no pet.). Here, appellant objected on rule 403 grounds and, after brief argument, the trial court overruled the objection. We find nothing in the record to indicate that the trial court did not perform a balancing test. Thus, we may presume from the record that the trial court conducted the balancing test and found the evidence more probative than prejudicial. By overruling appellant's rule 403 objection, we conclude the trial court conducted the balancing test after considering the objection. *Howland*, 966 S.W.2d at 103; *Yates*, 941 S.W.2d at 367; *Sparks v. State*, 935 S.W.2d 462, 466 (Tex.App.—Tyler 1996, no pet.). Accordingly, the trial judge committed no abuse of discretion in refusing to exclude the document. Appellant's sixteenth point of error is overruled.

### L. Double Jeopardy

By his eighth point of error, appellant contends the double jeopardy clauses of the United States and Texas constitutions precluded him from being sentenced in Cause No. 13–97–336–CR for attempted capital murder. Appellant contends both double jeopardy clauses were violated because the convictions for capital murder and attempted capital murder, as alleged in the indictments, constituted the same offense arising out of the same transaction.

■■■ The Fifth Amendment to the United States Constitution provides that no person shall "be subject for the same offense to be twice put in jeopardy of life

or limb." U.S. CONST. amend. V. This provision is applied to the states through the Due Process Clause of the Fourteenth Amendment. *Illinois v. Vitale,* 447 U.S. 410, 415, 100 S.Ct. 2260, 65 L.Ed.2d 228 (1980). The Texas Constitution also proscribes double jeopardy, TEX. CONST., art. I, § 14, but this provision does not require separate analysis, because it is well settled that the double jeopardy ban under the Texas Constitution affords no broader protection than the federal constitution. *Stephens v. State,* 806 S.W.2d 812, 815 (Tex. Crim.App.1990). The double jeopardy clause specifically protects against three distinct abuses by state authority: (1) a second prosecution for the same offense after acquittal; (2) a second prosecution for the same offense after conviction; and (3) multiple prosecutions for the same offense. *North Carolina v. Pearce,* 395 U.S. 711, 717, 89 S.Ct. 2089, 23 L.Ed.2d 656 (1969); *Ex parte Herron,* 790 S.W.2d 623, 624 (Tex.Crim.App.1990); *Gonzalez v. State,* 973 S.W.2d 427 (Tex.App.—Austin 1998, pet. granted). Appellant invokes the third protection.

 The double jeopardy guarantee against multiple punishments for the same offense prevents the sentencing court from prescribing greater punishment than the legislature intended. *Missouri v. Hunter,* 459 U.S. 359, 366, 103 S.Ct. 673, 74 L.Ed.2d 535 (1983); *Ex parte Kopecky,* 821 S.W.2d 957, 959 (Tex.Crim.App.1992); *Gonzalez,* 973 S.W.2d at 429. Greater inclusive and lesser included offenses are the same for jeopardy purposes. *Parrish v. State,* 869 S.W.2d 352, 354 (Tex.Crim.App. 1994) (citing *Brown v. Ohio,* 432 U.S. 161, 169, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977)).

██ In the first indictment (Cause No. 13–97–335–CR), appellant was charged with the capital murder of Missail Ramirez and Raul Gutierrez, and the attempted capital murder of Yvonne Gonzalez. The two-count indictment states, in relevant part:

## COUNT ONE

[Appellant] ... did then and there, intentionally, and knowingly cause the death of an individual, namely, Raul Gutierrez, by shooting the said Raul Gutierrez with a firearm, and did then and there intentionally and knowingly cause the death of another, namely, Missail Ramirez, by shooting Missail Ramirez with a firearm, and both murders were committed during the same transaction;

## COUNT TWO

[Appellant] ... did then and there, with the specific intent to commit the offense of murder of Yvonne Gonzalez, the victim, do an act, shoot the said Yvonne Gonzalez with a firearm, which amounted to more than mere preparation that tended but failed to effect the commission of the offense intended;

A second indictment (Cause No. 13–97–336–CR) charged appellant with the attempted capital murder of Missail Ramirez, Raul Gutierrez, and Yvonne Gonzalez. The second indictment states, in relevant part:

[Appellant] ... did then and there with the specific intent to commit the offense of Capital Murder of more than one person during the same criminal transaction, do an act, to-wit: shoot Raul Gutierrez, Missail Ramirez, and Yvonne Gonzalez with a deadly weapon, namely, a firearm, which amounted to more than mere preparation that tended but failed to effect the commission of the offense intended;

At trial, the State abandoned the second count of the first indictment. At the guilt/innocence phase of the trial, the jury found appellant guilty of the capital murder of Missail Ramirez and Raul Gutierrez as charged in the first indictment and guilty of the attempted capital murder of Missail Ramirez, Raul Gutierrez, and Yvonne Gonzalez as charged in the second indictment. At the punishment phase of the trial, the jury assessed appellant's pun-

ishment at life imprisonment for the capital murder, and life imprisonment and a $10,000 fine for the attempted capital murder.

Attempted capital murder is a lesser included offense of capital murder. *See* TEX.CODE CRIM. PROC. ANN. art. 37.09(4) (Vernon 1981). We hold the sentences imposed violated the double jeopardy clause of the Fifth Amendment.

■■■■ "The Supreme Court has directed that when a defendant is convicted in a single criminal action [7] of two offenses that are the 'same' for double jeopardy purposes, the remedy is to vacate one of the convictions." *Landers v. State,* 957 S.W.2d 558, 559 (Tex.Crim.App.1997) (citing *Ball v. United States,* 470 U.S. 856, 864–65, 105 S.Ct. 1668, 84 L.Ed.2d 740 (1985)). The test for determining which conviction to vacate is set out in *Landers.* The "test requires retaining the offense with the most serious punishment.... The 'most serious punishment' is the longest sentence imposed, with rules of parole eligibility and good time serving as a tiebreaker." *Landers,* 957 S.W.2d at 560. Section 508.145(b) of the government code provides:

> (b) An inmate serving a life sentence for a capital felony is not eligible for release on parole until the actual calendar time the inmate has served, without consideration of good conduct time, equals 40 calendar years.

TEX. GOV'T CODE ANN. § 508.145(b) (Vernon 1998). Thus, the most serious punishment is the life sentence for the capital murder conviction. We sustain appellant's eighth point of error. Accordingly, we vacate the judgment and sentence in Cause No. 13–97–336–CR.

M. INEFFECTIVE ASSISTANCE OF COUNSEL

By his first and second points of error, appellant complains he received ineffective assistance of counsel during the guilt/innocence phase and the punishment phase of the trial. In his first point of error, he contends that at the guilt/innocence phase, his trial counsel: (1) did not adequately investigate his case; (2) failed to object to statements; (3) failed to conduct an identification hearing; (4) allowed the court to proceed with eleven jurors; (5) failed to request a mistrial; (6) failed to request limiting instructions; and (7) failed to submit a double jeopardy argument. By his second point of error, appellant contends that at the punishment phase, his trial counsel: (1) allowed damaging extraneous offense evidence into evidence without objection; and (2) failed to request limiting instructions.

■■■■ The standard of review for ineffective assistance of counsel was set out in *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). *See Hernandez v. State,* 988 S.W.2d 770 (Tex.Crim.App.1999) (applying *Strickland* two-prong test to punishment phase, as well as to guilt/innocence phase); *Vasquez v. State,* 830 S.W.2d 948, 949 (Tex.Crim. App.1992); *Craig v. State,* 825 S.W.2d 128, 129 (Tex.Crim.App.1992); *Hernandez v. State,* 726 S.W.2d 53, 57 (Tex.Crim.App. 1986). A defendant seeking relief must demonstrate that: (1) counsel's performance failed to constitute reasonably effective assistance by falling below an objective standard of reasonableness under prevailing professional norms; and (2) there is a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different. *Strickland,* 466 U.S. at 694, 104 S.Ct. 2052; *Hernandez,* 726 S.W.2d at 55; *Washington v. State,* 771 S.W.2d 537, 545 (Tex.Crim.App.1989); *Lozada–Mendoza v. State,* 951 S.W.2d 39, 42 (Tex.App.—Corpus Christi 1997, no pet.). A "reasonable probability" is defined as "a probability sufficient to undermine confidence in the

---

7. A single prosecution on multiple indictments is considered a single criminal action.

*See* TEX. PEN.CODE ANN. § 302 (Vernon 1994).

outcome." *Strickland,* 466 U.S. at 694, 104 S.Ct. 2052; *Ex parte Walker,* 777 S.W.2d 427, 430 (Tex.Crim.App.1989). Whether this standard has been met is to be judged by "the totality of the representation." *Ex parte Welborn,* 785 S.W.2d 391, 393 (Tex. Crim.App.1990). Our review of counsel's performance must be highly deferential. *Strickland,* 466 U.S. at 689, 104 S.Ct. 2052; *Garcia v. State,* 887 S.W.2d 862, 880 (Tex. Crim.App.1994).

 The burden of proving ineffective assistance of counsel is on the appellant and is one which requires proof by a preponderance of the evidence. *Stafford v. State,* 813 S.W.2d 503, 506 (Tex.Crim. App.1991); *Moore v. State,* 694 S.W.2d 528, 531 (Tex.Crim.App.1985); *Cannon v. State,* 668 S.W.2d 401, 403 (Tex.Crim.App. 1984). An allegation of ineffective assistance of counsel will be sustained only if it is firmly founded and if the record affirmatively demonstrates counsel's alleged ineffectiveness. *Ex parte McWilliams,* 634 S.W.2d 815, 819 (Tex.Crim.App.1980). In determining whether trial counsel rendered deficient performance, we employ a strong presumption that counsel's conduct constitutes sound trial strategy. *Strickland,* 466 U.S. at 689, 104 S.Ct. 2052; *Miniel v. State,* 831 S.W.2d 310, 323 (Tex. Crim.App.1992).

 Consistent with *Strickland,* we must presume that counsel is better positioned than the appellate court to judge the pragmatism of the particular case, and that he made all significant decisions in the exercise of reasonable professional judgment. *Delrio v. State,* 840 S.W.2d 443, 447 (Tex.Crim.App.1992); *Moffatt v. State,* 930 S.W.2d 823, 826–27 (Tex.App.—Corpus Christi 1996, no pet.). The record must contain evidence of counsel's reasoning, or lack thereof, to rebut that presumption. *Jackson v. State,* 877 S.W.2d 768, 771 (Tex. Crim.App.1994).

### 1. *Guilt/Innocence Phase*
#### a. Double Jeopardy
 Appellant contends that at the guilt/innocence phase of the trial, his trial counsel failed to present a double jeopardy argument concerning the second indictment (cause no. 13–97–336–CR). As discussed above in point eight, we agree that trial counsel should have presented a double jeopardy argument. This error will be considered with the totality of the trial counsel's representation in order to determine if he supplied effective assistance of counsel. The constitutional right to counsel does not mean errorless counsel or counsel judged ineffective by hindsight. *Ex parte Carillo,* 687 S.W.2d 320, 324 (Tex.Crim.App.1985).

#### b. Inadequate Investigation
 Appellant contends his trial counsel did not adequately investigate his case as shown by the "critical" witnesses that were presented at the motion for new trial. Appellant presented no evidence of trial counsel's reasoning to rebut the presumption that it was sound trial strategy not to call the "new" witnesses. It is likely that trial counsel did not feel these witnesses were material or credible.

There is evidence in the record that trial counsel used a court-appointed investigator to investigate the case and to obtain the necessary evidence. It was through this investigator that trial counsel located Arnold Acosta and Berta Acosta who testified that appellant was at their home at the time of the shooting. We conclude there is no merit to appellant's contention that trial counsel did not adequately investigate this case.

#### c. Failure to Object
 Appellant contends his trial counsel failed to object to the testimony of Joseph Buenrostro, an investigator for the Sheriff's Department, concerning Raul Guerrero's identification of appellant as one of the shooters. Appellant argues that Buenrostro's testimony was hearsay.

Appellant must demonstrate on the record that but for counsel's failure to object,

there is a reasonable probability that the outcome of the trial would have been different. *See Strickland,* 466 U.S. at 690, 104 S.Ct. 2052; *Mooney v. State,* 817 S.W.2d 693, 697 (Tex.Crim.App.1991); *Rios v. State,* 857 S.W.2d 98, 102 (Tex. App.—Corpus Christi 1993, no pet.). Buenrostro's testimony simply restated the testimony of Raul Guerrero. Guerrero testified that he had seen appellant at the scene of the shooting. He also testified about appellant's involvement in the crime. Buenrostro simply described: (1) his interview with Guerrero after the incident; (2) Guerrero's identification of appellant in a photo line-up; and (3) a statement from Guerrero that "he had positively identified [appellant] as being one of the shooters involved in the drive by and that he knew him since—since he was—since they were little and they attended school together." Buenrostro's testimony regarding his interview with Guerrero is not hearsay because Guerrero had already provided the same testimony at trial and had been subject to cross-examination concerning the statement. *See* TEX.R. EVID. 801(e)(1).

Trial counsel probably did not object to Buenrostro's testimony because there was no reason to object. The testimony simply highlighted the details of his interview with Raul Guerrero; details which Guerrero, himself, testified to in much greater detail. Appellant has not established that but for counsel's failure to object, there is a reasonable probability that the outcome of the trial would have been different.

### d. Identification Hearing

Appellant contends his trial counsel should have conducted an identification hearing. Appellant does not indicate which witnesses should have been subject to an identification hearing, but we assume he is referring to Yvonne Gonzalez and Raul Guerrero, since they both made photo line-up identifications, or Martiniano Trevino, the investigator who showed Yvonne and Raul the photo line-up. Appellant states that if his trial counsel had

conducted the hearing, he might have been able to obtain information to impeach the witnesses and prevent the jury from hearing the damaging identification procedure evidence. The record contains no evidence to rebut the presumption that it was trial strategy. It is likely trial counsel did not ask for a hearing because there was no apparent problem with the manner in which the photo line-up identification was conducted, and counsel decided that a hearing would be fruitless. *See Gray v. State,* 797 S.W.2d 157, 159 (Tex.App.—Houston [14th Dist.] 1990, no pet.).

### e. Eleven Jurors

■ Appellant contends his trial counsel was ineffective because he failed to request a mistrial when the court proceeded with eleven jurors. At the time the juror was released, the jury was already deliberating on guilt/innocence. As discussed above in points nine and ten, appellant took the stand and asked the trial court to proceed with eleven jurors. No alternate could have been substituted because the two alternates had already been released. Also, release of the juror was beneficial to the appellant because the juror had already demonstrated his prejudice against appellant. The record contains no evidence from trial counsel concerning his decision to allow the eleven jurors to continue deliberating. There is no evidence to rebut the presumption that it was sound trial strategy.

### f. Limiting Instructions

Next, appellant contends that his trial counsel should have requested limiting instructions to "various kinds of evidence admitted during the trial." Appellant's contention is not adequately briefed. Appellant does not direct us to any instances where his trial counsel should have asked for limiting instructions, and our review of the record finds no such instances. *See* TEX.R.APP. P. 38.1(e). We hold appellant's contention is without merit.

### 2. *Punishment Phase*

#### a. Gang Evidence

Appellant contends that during the punishment phase of the trial, his trial counsel should have requested the exclusion of gang evidence, and once his objection was overruled, counsel should have asked for a limiting instruction. After reviewing the record, we find that appellant's trial counsel attempted to do this in his objection. Counsel stated, "that evidence is not admissible unless it can be demonstrated that it is somehow relevant to the issue of how the offense was committed." Also, the trial judge did limit the State's admission of gang evidence to the parameters of testimony from witnesses that actually knew of the criminal activity of appellant and his gang. Thus, trial counsel did try to limit the gang evidence, and in fact, the trial judge did place limitations on the evidence. We conclude appellant's contention is without merit.

#### b. Drug Dealing

Appellant also contends that his trial counsel should have objected to the State's introduction of appellant's drug dealing. We find no evidence in the record concerning appellant's drug dealing. However, Andres Garcia, a probation officer, did testify that appellant had tested positive for drugs while at a restitution center in 1995. During this testimony, trial counsel did not object. The record does not contain evidence of counsel's reasoning for not objecting, thus, we have no evidence to rebut the presumption that this constituted sound trial strategy.

### 3. *Conclusion*

After reviewing the entire record, we find that appellant's trial counsel raised pretrial motions, actively participated in *voir dire*, diligently protected the interest of his client by making objections concerning evidence and testimony throughout the trial, and aggressively presented his client's case before the court. We hold

appellant received effective assistance of counsel at trial. Appellant's first and second points of error are overruled.

We vacate the judgment and sentence in Cause No. 13–97–336–CR, the attempted capital murder case. We affirm the judgment and sentence in Cause No. 13–97–335–CR, the capital murder case.