**Opinion issued August 1, 2013**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-12-00482-CR

————————————

**CHARLES EDWARD WEST, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 185th District Court**
**Harris County, Texas**
**Trial Court Case No. 1328522**

---

## MEMORANDUM OPINION

Appellant, Charles Edward West, was charged with capital murder of an individual under six years of age.[1]  A jury convicted him of the lesser-included

---

[1]  *See* TEX. PENAL CODE ANN. §§ 19.02(b)(1), 19.03(a)(8) (Vernon 2011 & Supp. 2012).

offense of serious bodily injury to a child[2] and assessed his punishment at fifty-five years' confinement. In his sole issue on appeal, appellant argues that the trial court abused its discretion in "admitting autopsy photographs over objection when the photos were gruesome and the probative value nominal."

We affirm.

## Background

The complainant, J.W., was the two-year-old son of appellant's girlfriend, Tiffany Williams. On December 14, 2010, paramedics arrived at the apartment appellant and Williams shared to discover J.W. unconscious. He was transported to a local hospital and declared dead, and an autopsy was performed the next day. The autopsy revealed that J.W. had suffered numerous bruises and rib fractures and that his death was caused by multiple blunt force trauma.

The police interviewed Williams following the autopsy, and she told officers that appellant, after being alone with J.W. for several minutes, came out of the bedroom and told her that he "hit the baby too hard." Subsequently, appellant made a statement to police that he and J.W. were playing rough, but he did not intentionally hurt J.W. Appellant later admitted to wrestling with J.W. and stated that he might have fallen on J.W. or hit him too hard, but he again insisted that he never intentionally hurt J.W.

---

[2] *See id.* § 22.04(a) (Vernon Supp. 2012).

2

At trial, Williams testified that she had observed previous incidents of appellant abusing J.W. She stated that appellant would punch J.W. in the chest to make him stop crying and that, on one occasion, appellant struck J.W. with a wooden paddle hard enough to draw blood.

The medical examiner, Dr. Darshan Phatak, testified that he found multiple recent contusions and abrasions on J.W.'s body, including twenty-nine bruises on his torso alone, and that several of the bruises on J.W.'s face and torso were consistent with being "repeatedly punched." Dr. Phatak determined that two of the injuries discovered during the autopsy were capable of causing J.W.'s death. J.W. sustained a laceration to his liver that caused severe blood loss, and he had a head injury that resulted in a subdural hemorrhage. Regarding the head injury, Dr. Phatak testified that "you don't get a good idea of how hard the force is that impacts the body until you see what might have been damaged inside." He further testified that he observed hemorrhaging under J.W.'s scalp and on his brain, and that observing the injuries below the surface of the scalp is a better indicator of the strength of the blow.

The State offered exhibits 90 and 91—eight-by-ten inch colored photographs of J.W.'s scalp and brain taken during the autopsy—as demonstrating the injuries Dr. Phatak observed "in [his] determination of the strength of the blow as well as whether this was an accident or not." Appellant objected that the photographs had

3

no probative value and that any probative value was "outweighed by the damage of the photographs." The trial court overruled the objection, stating, "The Court, after a 403 balancing test, determined that the probative value of the jury understanding the nature of the injury and whatever force was necessary outweighs the prejudicial value and they are admitted."

Dr. Phatak went on to testify that the hemorrhages demonstrated in the photographs indicated "strong" force was used to strike J.W. He testified that the bruising was not consistent with an accidental fall or with a grown man falling on top of J.W. He stated that the force required to cause the laceration to J.W.'s liver was the equivalent of a boxer throwing a punch. Dr. Phatak stated that the degree of trauma demonstrated by the brain injury and liver injury did not indicate accidental and unintentional injury, but instead indicated that J.W. had been beaten to death. The State admitted a total of twenty-six photographs of J.W. taken during the medical examiner's autopsy, which Dr. Phatak used to testify about the multiple injuries J.W. sustained at or near the time of his death.

## Admission of Autopsy Photographs

In his sole issue on appeal, appellant argues that the trial court erred in admitting the two autopsy photographs depicting J.W.'s skull and brain. He argues that the photographs were "particularly gruesome" and that the "gruesomeness of the photographs far outweigh[s] any possible probative value the photographs may

4

have." Thus, he argues that they should have been excluded under Rule of Evidence 403. Appellant also argues that the photographs were "cumulative and bolstering of the medical examiner's testimony.

We review a trial court's decision to admit or exclude evidence for an abuse of discretion. *Torres v. State*, 71 S.W.3d 758, 760 (Tex. Crim. App. 2002); *see also Gallo v. State*, 239 S.W.3d 757, 762 (Tex. Crim. App. 2007) ("The admissibility of a photograph is within the sound discretion of the trial judge."). We will not reverse the trial court's ruling unless the ruling falls outside the zone of reasonable disagreement. *Torres*, 71 S.W.3d at 760. We will not disturb a trial court's evidentiary ruling if it is correct on any theory of law applicable to that ruling. *De La Paz v. State*, 279 S.W.3d 336, 344 (Tex. Crim. App. 2009).

To be admissible, evidence must be relevant. TEX. R. EVID. 401. Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." *Id.* Generally, a photograph is admissible if verbal testimony as to matters depicted in the photograph is also admissible. *Gallo*, 239 S.W.3d at 762 (holding that fact that jury also heard testimony regarding matter depicted in photograph "does not reduce the relevance of the visual depiction").

Rule of Evidence 403 provides that evidence, although relevant, "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence." TEX. R. EVID. 403. Rule 403 "favors the admission of relevant evidence and carries a presumption that relevant evidence will be more probative than prejudicial." *Gallo*, 239 S.W.3d at 762. A proper Rule 403 analysis includes, but is not limited to, the following factors: (1) the probative value of the evidence; (2) the potential to impress the jury in some irrational, yet indelible way; (3) the time needed to develop the evidence; and (4) the proponent's need for the evidence. *Prible v. State*, 175 S.W.3d 724, 733 (Tex. Crim. App. 2005). The court may also consider factors such as "the number of [photographs] offered, their gruesomeness, their detail, their size, whether they are in color or black-and-white, whether they are close up, whether the body depicted is clothed or naked, the availability of other means of proof, and other circumstances unique to the individual case." *Davis v. State*, 313 S.W.3d 317, 331 (Tex. Crim. App. 2010). Thus, Rule 403 requires that the photograph have some probative value and that its probative value not be substantially outweighed by its inflammatory nature. *Williams v. State*, 301 S.W.3d 675, 690 (Tex. Crim. App. 2009).

6

Autopsy photographs are relevant to show the manner and means of death. *Moreno v. State*, 1 S.W.3d 846, 857 (Tex. App.—Corpus Christi 1999, pet. ref'd). The Court of Criminal Appeals has held that autopsy photographs are generally admissible unless they depict mutilation of the victim caused by the autopsy itself. *Williams*, 301 S.W.3d at 690. However, it has also held that autopsy photographs that show mutilation caused by the autopsy are admissible in some circumstances, such as when the photographs show an injury that would not have been visible otherwise. *See Davis*, 313 S.W.3d at 331 (holding trial court did not abuse its discretion in admitting photograph of cross-section of complainant's tongue; photo was necessary to show injury not otherwise visible); *Gallo*, 239 S.W.3d at 763 (holding that autopsy photographs depicting complainant's brain, skull, and removed, fractured rib were admissible; medical examiner used photos to show injuries that could not be seen from body's surface and were probative of full extent of injury to complainant). "A trial court does not err merely because it admits into evidence photographs which are gruesome." *Sonnier v. State*, 913 S.W.2d 511, 519 (Tex. Crim. App. 1995); *see also Gallo*, 239 S.W.3d at 763 ("Although these photographs are gruesome, there was no danger that the jury would attribute the removal of the rib, scalp, or skull cap to the defendant.").

Here, the appearance of J.W.'s internal brain injury was highly probative of the full extent of J.W.'s injuries and the manner and means of his death. *See*

7

*Gallo*, 239 S.W.3d at 763; *Moreno*, 1 S.W.3d at 857. Appellant made a statement to police that he did not intentionally hurt J.W. and that the child's injuries might have been caused by an accidental fall—either when J.W. himself fell or when appellant fell on top of him. The State had the burden to prove that appellant intentionally or knowingly caused J.W.'s death or serious bodily injury. *See* TEX. PENAL CODE ANN. §§ 19.02(b)(1), 19.03(a)(8) (Vernon 2011 & Supp. 2012) (providing that person commits offense of capital murder if he intentionally or knowingly causes death of another individual and that individual was under ten years of age); *id.* § 22.04(a) (Vernon Supp. 2012) (providing that person commits offense of injury to child "if he intentionally, knowingly, recklessly, or with criminal negligence, by act, . . . causes to a child . . . serious bodily injury."). Dr. Phatak testified that neither of the two fatal injuries that J.W. sustained could have been caused accidentally or unintentionally. Regarding the contested photographs, Dr. Phatak testified that the extent of J.W.'s brain injury could not be determined from looking at the outside of his head. It was only by examining the hemorrhaging under J.W.'s scalp and on his brain that Dr. Phatak could determine that the force required to cause such an injury could not have been caused by the scenarios proposed by appellant.

Exhibits 90 and 91 were only two of the twenty-six photographs used by the State to demonstrate the various injuries J.W. sustained at or near the time of his

8

death. These two photographs did not receive any undue emphasis in terms of size, quality, length of time they were displayed, or Dr. Phatak's accompanying testimony. Although the photographs were gruesome, here, as in *Gallo*, there was no danger that the jury would attribute the removal of the scalp flap or skull cap to appellant. *See Gallo*, 239 S.W.3d at 763; *see also Williams*, 301 S.W.3d at 692–93 (holding that photograph is not inadmissible because it reflects reality of brutal crime that was committed); *Sonnier*, 913 S.W.2d at 519 ("A trial court does not err merely because it admits into evidence photographs which are gruesome.").

Appellant further argues that the photographs were bolstering and cumulative of Dr. Phatak's testimony. However, "[A] visual image of the injuries appellant inflicted on the victim is evidence that is relevant to the jury's determination. The fact that the jury also heard testimony regarding the injuries depicted [in the photographs] does not reduce the relevance of the visual depiction." *See Gallo*, 239 S.W.3d at 762; *see also Moreno*, 1 S.W.3d at 857 (holding that autopsy photographs are relevant to show manner and means of death).

Thus, under the circumstances of this case, we cannot conclude that the trial court abused its discretion in deciding that the probative value of the photographs substantially outweighed the danger of unfair prejudice. *See Prible*, 175 S.W.3d at 733; *Davis*, 313 S.W.3d at 331.

We overrule appellant's sole issue.

## Conclusion

We affirm the judgment of the trial court.

Evelyn V. Keyes
Justice

Panel consists of Justices Keyes, Higley, and Bland.

Do not publish.   TEX. R. APP. P. 47.2(b).