

# NUMBER 13-11-00208-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

---

**LOUIS BOWDON MATTHEWS JR.,** **Appellant,**

**v.**

**THE STATE OF TEXAS,** **Appellee.**

---

### On appeal from the Criminal District Court
### of Jefferson County, Texas.

---

# MEMORANDUM OPINION[1]

### Before Justices Garza, Benavides, and Perkes
### Memorandum Opinion by Justice Perkes

Appellant, Louis Bowdon Matthews Jr., appeals his conviction for continuous sexual

abuse of a young child, a first-degree felony. *See* TEX. PENAL CODE ANN. § 21.02 (West

2011). A jury found appellant guilty of the offense of continuous sexual abuse of a young

---

[1] This case is before this Court on transfer from the Ninth Court of Appeals in Beaumont pursuant to an order issued by the Supreme Court of Texas. *See* TEX. GOV'T CODE ANN. § 73.001 (West 2005).

child, and the trial court sentenced him to fifty years of confinement in the Texas Department of Criminal Justice, Institutional Division. By three issues, appellant contends that: (1) the evidence is insufficient to support his conviction; (2) the trial court committed egregious harm in submitting an erroneous jury charge; and (3) his trial counsel rendered ineffective assistance by failing to object to the trial court's jury charge and by failing to request notice, obtain rulings on various motions, request hearings, and/or object to the admissibility of extraneous-offense evidence. We affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND[2]

In June 2008, thirteen-year-old M.S.[3] joined a girls' softball team, which appellant, then forty-six years old, coached. M.S. would be dropped off at softball practice, and most of the time, appellant took her home when practice was finished. M.S. began staying after practice to work with appellant on pitching, and "most of the time" it was just the two of them.

M.S. testified that she and appellant would talk about "softball and practice." Later, their conversations shifted to "school, just stuff that we do, friends, boys I talked to." When asked at trial whether she began confiding in appellant, M.S. responded, "Yes."

M.S. became friends with appellant's twelve-year-old daughter, who would invite M.S. to "hang out" at appellant's house. M.S. testified that "the first couple of times we hung out and then . . . [appellant's daughter] would go to the computer room and I would kind of just hang out with [appellant] or we would all hang out in the living room." Appellant was

---

[2] Because this is a memorandum opinion and the parties are familiar with the facts, we will not recite them here except as necessary to advise the parties of the Court's decision and the basic reasons for it. *See* TEX. R. APP. P. 47.4.

[3] We use an alias to refer to the minor and to the minor's parents or other family members.

divorced, and there were no adult women in the house. One time, as M.S. was about to leave appellant's house, he kissed her. On a different occasion, appellant picked M.S. up to take her to practice pitching, and while they were riding in the car he held M.S.'s hand.

In August 2008, appellant had sex with M.S. at his house. M.S. testified that following this first encounter, and before she turned fourteen years old in April of 2009, appellant had sex with her "[o]ver 30" times. Because M.S. could not drive and her mother did not want M.S. to spend too much time at appellant's house, appellant and M.S. would have sex "[a]fter softball practices." Appellant would pick her up "at every [high school] football game and have me [M.S.] back before it was over." In addition, "[t]here were other things." Instead of working on M.S.'s pitching, they "had oral sex many times at the softball fields[,] in his car parked in front of the library, at the Nederland softball fields, [and] at the softball fields on College." M.S. testified that she could not remember the exact dates on which she had sexual intercourse with appellant "because we had sex numerous times."

During their relationship, M.S. took several nude photographs of herself with a cell phone and sent digital copies of them to appellant. These photographs were close-up images of M.S.'s nude breasts and vagina. Officer Jeff Curl, an officer with the Beaumont Police Department who had been trained in the forensic examination of computers and hard drives, testified that each digital photograph had "data" attached to its digital file, which included the date on which each photograph had been taken. Officer Curl's testimony proved that M.S. took most of the nude photographs while she was still thirteen years old—some in December 2008 and others in March 2009.

M.S.'s mother testified that she became concerned about M.S.'s relationship with appellant after M.S. ran away from home on August 13, 2008. M.S.'s mother contacted

3

appellant in an attempt to find M.S., but he told her that he had not spoken to M.S. After she called the police to report M.S. running away, she was led to the "Nederland football stadium," where appellant also arrived. M.S.'s mother did not think that the police would have contacted appellant. She knew that she had not.

M.S.'s mother testified that she did not want M.S. to spend too much time with appellant. Accordingly, M.S. only spent the night with appellant's daughter on "[t]hree or four occasions" from late 2008 until early 2009. M.S.'s mother also testified that appellant had been texting M.S. "[a]ll day long, all night long," a fact which M.S.'s mother discovered while reviewing her account online. M.S.'s mother asked appellant to stop, and she ultimately blocked his phone number from reaching M.S.'s cell phone. Sometime prior to July 2009, M.S.'s mother confiscated a cell phone from M.S. that she had not purchased for her. M.S. later admitted appellant purchased the cell phone. M.S. testified that appellant actually bought her two or three cell phones throughout their relationship: one after she broke her cell phone and another after her parents blocked his calls.

In May 2009, one month after M.S. turned fourteen, appellant's softball team disbanded. M.S., however, continued to receive private lessons from appellant. Their relationship continued until November 2009, at which point M.S. told her mother about the relationship. M.S.'s mother reported the relationship to the police.

## II. SUFFICIENCY OF THE EVIDENCE

By his first issue, appellant contends that the evidence is insufficient to support his conviction for continued sexual abuse of a young child. Specifically, appellant argues that, although the State presented sufficient evidence to prove that appellant and M.S. had sexual intercourse in August 2008 and again after she was fourteen years old, the State failed to

4

prove that appellant and M.S. had sexual intercourse at least two times during a time span of thirty or more days while M.S. was still thirteen years old. We disagree.

## A. Standard of Review

"The standard for determining whether the evidence is legally sufficient to support a conviction is 'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Johnson v. State*, 364 S.W.3d 292, 293–94 (Tex. Crim. App. 2012) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)) (emphasis in original); *see Brooks v. State*, 323 S.W.3d 893, 898–99 (Tex. Crim. App. 2010) (plurality op.). The fact-finder is the exclusive judge of the credibility of witnesses and of the weight to be given to their testimony. *Anderson v. State*, 322 S.W.3d 401, 405 (Tex. App.—Houston [14th Dist.] 2010, pet. ref'd) (citing *Lancon v. State*, 253 S.W.3d 699, 707 (Tex. Crim. App. 2008)). Reconciliation of conflicts in the evidence is within the fact-finder's exclusive province. *Id.* (citing *Wyatt v. State*, 23 S.W.3d 18, 30 (Tex. Crim. App. 2000)). We must resolve any inconsistencies in the testimony in favor of the verdict. *Id.* (citing *Curry v. State*, 30 S.W.3d 394, 406 (Tex. Crim. App. 2000)).

We measure the sufficiency of the evidence by the elements of the offense as defined by a hypothetically correct jury charge. *Villarreal v. State*, 286 S.W.3d 321, 327 (Tex. Crim. App. 2009) (citing *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997)). Such a charge is one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried. *Id.* To convict appellant under this statute, the State was required to prove four

5

elements: (1) appellant committed two or more acts of "sexual abuse;" (2) over a span of thirty days or more; (3) against M.S.; and (4) that at the time of the "sexual abuse," appellant was seventeen years of age or older and M.S. was younger than fourteen years of age. *See* TEX. PENAL CODE ANN. § 21.02; *Williams v. State*, 305 S.W.3d 886, 889 (Tex. App.—Texarkana 2010, no pet.).

For the purposes of section 21.02, an "act of sexual abuse" means a violation of a specific Penal Code statute, including aggravated sexual assault under Texas Penal Code section 22.021. *See* TEX. PENAL CODE ANN. § 21.02(c)(4). As applied in this case,[4] a person commits an aggravated sexual assault by intentionally or knowingly causing the penetration of the anus or sexual organ of a child[5] by any means or causing the sexual organ of the child to contact or penetrate the sexual organ of another person, including the actor, and the victim is younger than fourteen years of age. TEX. PENAL CODE ANN. §§ 22.021(a)(1)(B)(i); 22.021(a)(1)(B)(iii); 22.021(a)(2)(B).

## B. Discussion

Appellant's insufficiency challenge concerns the offense's second element—that the two or more acts of "sexual abuse" took place over a span of thirty or more days and before M.S. turned fourteen. Appellant acknowledges that M.S. testified that she and appellant had sexual intercourse in August 2008, and concedes that there is evidence of a sexual relationship between M.S. and appellant after M.S. turned fourteen. Rather, appellant

---

[4] In addition to the two provisions applicable in this case, section 22.021 lists other ways by which a person commits an aggravated sexual assault. *See* TEX. PENAL CODE ANN. § 22.021.

[5] "'Child' has the meaning assigned by section 22.011(c)." TEX. PENAL CODE ANN. § 22.021(b)(1). "'Child' means a person younger than 17 years of age." *Id.* § 22.011(c).

6

challenges the sufficiency of the evidence to prove the existence of a sexual relationship between those two reference points.

M.S. testified that she and appellant had sexual intercourse over thirty times between August 2008 and her fourteenth birthday in April 2009. The jury also heard testimony that (1) M.S. only stayed at appellant's house three or four times in late 2008 and early 2009; (2) appellant and M.S. had oral sex "many times;" (3) appellant would pick M.S. up "at *every* football game"[6] (emphasis added) to have sex with her; (4) appellant and M.S. had sex after softball practices; and (5) M.S.'s mother did not want M.S. to spend too much time with appellant. Much of appellant's argument amounts to an attack on M.S.'s credibility, and disregards her testimony, including her testimony that appellant would pick her up at *every* football game to have sex. To the extent appellant challenges M.S.'s credibility, we defer to

---

[6] M.S.'s mother's testimony indicated that this pattern also partially existed during the 2009 football season, at which time M.S. would have been fourteen. However, this does not preclude the possibility that M.S. and appellant followed the same pattern during the previous football season. M.S.'s statement about how they would get the opportunity to have sexual intercourse was in response to the following questioning:

**State:** Was this the only time [the first time in August 2008] it [sexual intercourse] happened?

**M.S.:** That he—

**State:** Had sex with you?

**M.S.:** No.

**State:** Were the acts between the two of you limited to straight, normal sexual intercourse or were there other things as well?

**M.S.:** There were other things.

**State:** If your mom doesn't let you go over there very often, okay, right?

**M.S.:** Yes.

**State:** And you can't drive, can you tell the jury how the two of you would get together to have sex?

Based on this context, we think the jury could rationally conclude that M.S.'s statement about being picked up at "every football game" was a reference to the 2008 football season.

the jury as the judge of credibility, and resolve any inconsistencies in the testimony in favor of the verdict. *See Anderson v. State,* 322 S.W.3d 401, 405 (Tex. App.—Houston [14th Dist.] 2010, pet. ref'd).

Under the *Jackson* test, we permit juries to draw reasonable inferences as long as each inference is supported by the evidence presented at trial. *See Hooper v. State*, 214 S.W.3d 9, 15 (Tex. Crim. App. 2007). The jury could have reasonably inferred that the above evidence shows that appellant's sexual abuse took place over a span of thirty or more days and before M.S. turned fourteen. This is especially true given that the jury also heard testimony from Officer Curl stating that several of M.S.'s nude photographs were sent to appellant in December 2008 (about four months after August 2008) and March 2009 (about eight months after August 2008). The photographs support a conclusion that the sexual relationship was ongoing. The same is true regarding the testimony about appellant's persistence in texting M.S., including buying her a cell phone so he could text her without her parents' knowledge.

Appellant's argument is similar to the one raised by the defendant in *Cantu v. State*. *See* No. 13-10-00270-CR, 2011 Tex. App. LEXIS 6658, at *14 (Tex. App.—Corpus Christi Aug. 22, 2011, pet. ref'd) (mem. op., not designated for publication). In *Cantu*, the defendant argued that the evidence was insufficient to support his conviction for the continuous sexual abuse of a young child because the State failed to prove "the very first and most pivotal element: the time frame." *Id.* The defendant argued that the complainant "testified about the time line in broad generalities," but failed to testify he "had touched her inappropriately *during the time period specified in the indictment*." *Id.* (emphasis added). Testimony indicated that the victim had complained to her mother in "August or September

8

2008," telling her that the defendant had touched her inappropriately. In December 2008, the victim wrote a letter to Santa and asked Santa to tell the defendant to stop touching her. *Id*. at \*14–15. At the defendant's trial, the victim was asked if someone had touched her inappropriately during the time from September 2007 until December 2008, and she stated that the defendant did "[a] lot of times." *Id*. at \*15. The victim also testified that the defendant touched her more than two times "from the time" she was eight years old "to the date" she wrote the letter to Santa. *Id*.; *see also Williams*, 305 S.W.3d at 888–90 (finding evidence sufficient to support time element because, although the victim was unable to speak to the time span over which the sexual abuses occurred, she testified that the defendant sexually abused her "[m]ore than twice," and "just about every time" she went to the his house, which was regularly over a five-month period of time).

In *Cantu*, this court considered the evidence and found it sufficient to support the element that the defendant committed two or more acts of "sexual abuse" within a time span of thirty days or more. *Cantu*, 2011 Tex. App. LEXIS 6658, at \*16. Similar to the defendant's argument in *Cantu*, appellant's contention is premised on characterizing the victim's general references to time, rather than citations to specific dates, as not sufficiently exact to satisfy the statutory requirement. But, as we held in *Cantu*, "Although the child victim[ ] in this case [was] unable to articulate the exact times and dates . . . there was sufficient evidence to allow the jury to determine whether the crimes occurred during a period that was thirty days or more." *Id*. at \*15–16 (citing *Williams*, 305 S.W.3d at 890 n.7 ("Arguably this [the child's inability to articulate the exact dates when the abuse occurred] is precisely the kind of situation the Legislature considered when enacting Section 21.02 of the Texas Penal Code.")).

9

Viewing the evidence in a light most favorable to the verdict, we hold that the evidence is sufficient to support the element being challenged on appeal. We overrule appellant's first issue.

### III. JURY CHARGE

By his second issue, appellant argues that the jury charge was fundamentally flawed because it erroneously permitted the jury to find him guilty for actions that occurred when M.S. was fourteen years old. Specifically, appellant contends by three sub-issues that the trial court erred by: (1) providing erroneous definitions of "child" and "aggravated sexual assault" in the jury charge; (2) instructing the jury that unanimity is not required for the exact date or dates of sexual abuse, thereby allowing the jury to convict appellant for events that took place after M.S. was fourteen years old; and (3) providing a term, "aggravated sexual assault of a child," which is neither defined in the charge nor is a cognizable crime under the law. All of appellant's arguments are being raised for the first time on appeal.

### A. Standard of Review

When an appellate court is presented with an argument that a trial court committed reversible error by giving a jury an erroneous definition, the reviewing court must conduct a two-step inquiry: "First, the reviewing court must determine whether the jury charge contains error. Second, the court must determine whether sufficient harm resulted from the error to require reversal." *Mann v. State*, 964 S.W.2d 639, 641 (Tex. Crim. App. 1998) (en banc) (citing *Abdnor v. State*, 871 S.W.2d 726, 731–32 (Tex. Crim. App. 1994)); *Benn v. State*, 110 S.W.3d 645, 648 (Tex. App.—Corpus Christi 2003, no pet.). Once an appellate court finds jury-charge error, it applies one of the two following standards of review: "Where there has been a timely objection made at trial, an appellate court will search for only 'some

harm.'   By contrast, where the error is urged for the first time on appeal, a reviewing court will search for 'egregious harm.'"   *Mann*, 964 S.W.2d at 641 (quoting *Abdnor*, 871 S.W.2d at 731–32); *see also Ngo v. State*, 175 S.W.3d 738, 743 (Tex. Crim. App. 2005) (en banc); *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (op. on reh'g) *superseded on other grounds by rule as stated in Rodriguez v. State*, 758 S.W.2d 787, 788 (Tex. Crim. App. 1988) ("if no proper objection was made at trial and the accused must claim that the error was 'fundamental,' he will obtain a reversal only if the error is so egregious and created such harm that he 'has not had a fair and impartial trial'—in short 'egregious harm.'").

## B. The Jury Charge[7]

The jury charge reads, in relevant part, as follows:

**INTRODUCTION:**

"The defendant stands charged by indictment with the offense of Continuous Sexual Abuse of a Child, alleged to have been committed in Jefferson County, Texas, from on or about August 15, 2008, and continuing through on or about April 12, 2009."

\* \* \* \* \*

**CONTINUOUS SEXUAL ABUSE OF A CHILD:**

A person commits an offense if:

  (1) during a period that is thirty (30) or more days in duration, the person commits two or more acts of sexual abuse, regardless of whether the acts of sexual abuse are committed against one or more victims; and

  (2) at the time of the commission of each of the acts of sexual abuse, the actor is 17 years of age or older and the victim is a child younger than 14 years of age.

The term "act of sexual abuse" as used herein means any act that is a violation of the following penal law:   Aggravated Sexual Assault.

---

[7] The capitalization and highlighted phrases are as shown in the jury charge.

11

The jury is not required to agree unanimously on the exact date or dates when acts of sexual abuse were committed. The jury must agree unanimously that the defendant, during a period that is thirty (30) days or more days in duration, committed two or more acts of sexual abuse.

**AGGRAVATED SEXUAL ASSAULT:**

A person commits an offense of Aggravated Sexual Assault if the person intentionally or knowingly:

  (1) causes the penetration of the sexual organ of a child by any means; or
  (2) causes the sexual organ of a child to contact or penetrate the sexual organ of another person, including the actor; and
  (3) the victim is younger than fourteen (14) years of age.

**DEFINITIONS:**

So that you better understand some of the words and terms used in the charge, the law provides the following definitions.

**CHILD:**

The term 'Child' as used herein means a person younger than 17 years of age.

* * * * *

**ON OR ABOUT:**

You are instructed that the State is not bound by the dates of from on or about August 15, 2008, continuing to on or about April 12, 2009, alleged in the indictment, and the defendant may be convicted if you believe beyond a reasonable doubt that the defendant committed the offense alleged within a period of unlimited years preceding the filing of the indictment, so long as you believe beyond a reasonable doubt that the defendant committed the offense(s) alleged while the Complainant was under the age of 14.

* * * * *

**SEXUAL ASSAULT OF A CHILD:**

A person commits the offense of Sexual Assault of a Child if the person intentionally or knowingly causes the penetration of the female sexual organ of a child by any means.

## C. Discussion

### 1. Definitions of "Child" and "Aggravated Sexual Assault"

Appellant argues that the foregoing definitions of "child" and "aggravated sexual assault" constitute error. The trial court defined "child" exactly as it is defined in section 21.02, the section for sexual abuse of a young child. *See* TEX. PENAL CODE ANN. § 21.02(a). Section 21.02 states, "In this section, 'child' has the same meaning assigned by section 22.011(c)." *Id.* Section 22.011(c) provides: "'Child'" means a person younger than 17 years of age." *Id.* § 22.011(c)(1). This definition accords with the trial court's jury instruction on the term "child." A jury charge that tracks the language and definitions of the Texas Penal Code is not error. *See Martinez v. State*, 924 S.W.2d 693, 699 (Tex. Crim. App. 1996) (holding that a jury charge tracking language of particular statute is proper charge because "[f]ollowing the law as it is set out by the Texas Legislature will not be deemed error on the part of the trial judge"); *Benn*, 110 S.W.3d at 649 (same).

Appellant further argues that the court neither defined nor included in the jury charge the term "young child," which appears in the heading to section 21.02: "Continuous Sexual Abuse of *Young Child* or Children." *See* TEX. PENAL CODE ANN. § 21.02 (West 2011) (emphasis added). The term "young child" only appears in the heading; it does not appear in the substance of the statute. *See id.* Although "young child" is not specifically referenced in the statute, one of the elements of the offense is that "at the time of commission of each of the acts of sexual abuse, the actor is 17 years of age or older and the victim is a child younger than 14 years of age." *Id.* § 21.02(b)(2). The trial court copied this language verbatim in its jury charge. For the reasons outlined above, we hold that the trial

13

court did not err by tracking the language of the Texas Penal Code. *See Martinez*, 924 S.W.2d at 699; *Benn*, 110 S.W.3d at 649.

Appellant also complains that the "aggravated sexual assault" definition is erroneous. Aggravated sexual assault is one of the enumerated definitions of "act of sexual abuse" included in section 21.02. *See* TEX. PENAL CODE ANN. § 21.02(c) (West 2011). The elements of aggravated sexual assault are found in section 22.021. *See id.* § 22.021. The court's jury-charge instruction included three of the statutorily-available methods by which a person commits aggravated sexual assault, and the court's instruction on those three methods tracked the language of section 22.021. *See id.*

Much of appellant's argument centers on the trial court's usage of two conjunctions: the term "or" at the end of the first itemized manner of committing the offense and the term "and" at the end of the second method of commission. Appellant suggests that this rendition could allow the jury to convict appellant if it found only (1) took place *or* both (2) and (3) took place. In other words, appellant contends that the instruction allowed conviction for sexual intercourse of a child or, separately, a child younger than fourteen. If appellant's interpretation is correct, the jury could have convicted appellant for having sexual intercourse two or more times with M.S. *after* she turned fourteen because she was still a "child" (i.e. younger than seventeen).

The language used in the trial court's jury charge reflects the language and structure of the offense as provided by law. *See id.* §§ 22.021(a)(1)(B)(i), 22.021(a)(1)(B)(iii), 22.021(b)(1). The Texas Penal Code uses the same conjunctions that the trial court used in its jury charge. *See id.* §§ 22.021(a)(1)(B)(iv) ("or"), 22.021(a)(1)(B)(v) ("and"). Indeed, appellant's counsel at oral argument acknowledged that the "culprit" was the Texas

Legislature, not the trial judge. Appellant, however, has not brought an issue on appeal challenging the statute as unconstitutionally vague or ambiguous, and we cannot entertain an unpreserved challenge directed at the statute. *See Scott v. State*, 322 S.W.3d 662, 670–71 (Tex. Crim. App. 2010), *cert. denied*, 131 S. Ct. 2096 (2011); *Karene v. State*, 281 S.W.3d 428, 434 (Tex. Crim. App. 2009). Neither can we hold that tracking the language and definitions of the Texas Penal Code gives an inaccurate statement of the law. *See Martinez*, 924 S.W.2d at 699; *Benn*, 110 S.W.3d at 649.

Second, appellant argues that the trial court improperly instructed the jury that unanimity is not required for the exact date or dates of sexual abuse, thereby allowing the jury to convict appellant for events that took place after M.S. was fourteen years old. We hold that there is no error in the trial court's instruction that the jury need not be unanimous on the exact dates of sexual abuse. The instruction emphasized that the jury must be unanimous that two or more acts of sexual abuse occurred during a time period of thirty or more days. This provision comes directly from subsection (d) of section 21.02. *See* TEX. PENAL CODE ANN. § 21.02(d) (West 2011). As noted earlier, the instruction also outlined the elements of the offense, including the victim's age requirement. The trial court did not err by tracking the language of the statute. *See Martinez*, 924 S.W.2d at 699; *Benn*, 110 S.W.3d at 649.

Third, appellant argues that there was error in the application portion of the jury charge. Appellant complains about the following:

> Now, if you believe from the evidence beyond a reasonable doubt that in Jefferson County, Texas, on or about August 15, 2008 and continuing through on or about April 12, 2009, the defendant Louis Bowden Mattnews [sic], Jr. did then and there intentionally or knowingly, during a period of more than thirty (30) days in duration, commit two (2) or more acts of sexual abuse, namely,

15

Aggravated Sexual Assault of a Child, against [M.S.], hereinafter styled the Complainant, a child younger than fourteen years of age and at the time the Defendant was older than seventeen years of age, you shall find the Defendant GUILTY of the offense of Continuous Sexual Abuse of a Child.

Appellant contends that the phrase "Aggravated Sexual Assault of a Child" is problematic because the court failed to define it and it does not exist as a crime in the Texas Penal Code. Appellant also argues that the foregoing instruction misidentified the crime by using the word "child" rather than "young child" as used in the Texas Penal Code, and thus the jury could convict appellant for sexual encounters which occurred while M.S. was fourteen.

Contrary to appellant's argument, the charge did not permit appellant's conviction for sexual encounters between him and M.S. after she turned fourteen. Rather, the charge repeatedly emphasized that the jury must find the conduct to have occurred while M.S. was younger than fourteen. That the specific phrase "Aggravated Sexual Assault of a Child" is neither defined in the charge nor in the Texas Penal Code is of no moment. The "Child" is the victim of the aggravated sexual assault, and the term "Child" appears in the elements of aggravated sexual assault. *See* TEX. PENAL CODE ANN. § 22.021(a)(1)(B) (West 2011). The portion of the jury instruction setting forth the elements of aggravated sexual assault made it necessary that the victim be younger than fourteen years of age. Moreover, immediately following the phrase "Aggravated Sexual Assault of a Child" is the specific requirement that, in order to convict appellant, the jury must find evidence beyond a reasonable doubt that M.S. was "a child younger than fourteen years of age and at the time . . . ." Likewise, appellant's contention that the term "child" rather than "young child" in this section allowed the jury to consider appellant's relationship with M.S. after she turned

16

fourteen ignores the same charged provision that the jury find M.S. to have been "a child younger than fourteen years of age" at the time of the offense.

Having determined that there was no jury charge error, we need not perform a harm analysis. The court's jury charge accurately reflects the law and properly instructed the jury to convict appellant only upon finding beyond a reasonable doubt that appellant committed two or more acts of sexual abuse against M.S. over a duration of thirty or more days and while she was younger than fourteen years of age. We overrule appellant's second issue.

## IV. INEFFECTIVE ASSISTANCE OF COUNSEL

By his third and final issue, appellant argues that his trial counsel provided ineffective assistance by failing to: (1) object to the "fundamental flaws" in the jury charge; and (2) request notice, obtain rulings on motions, request hearings, and/or object with respect to the admissibility of extraneous-offense evidence. We disagree.

### A. Standard of Review

The Sixth Amendment to the United States Constitution, and section 1 of the Texas Constitution, guarantee individuals the right to assistance of counsel in a criminal prosecution. *See* U.S. CONST. amend VI; TEX. CONST. art. 1, § 10; *Lopez v. State*, 343 S.W.3d 137, 142 (Tex. Crim. App. 2011). The right is not one of errorless counsel, but to objectively reasonable representation. *Lopez*, 343 S.W.3d at 142 (citing *Strickland v. Washington*, 466 U.S. 668, 686 (1984); *Robertson v. State*, 187 S.W.3d 475, 483 (Tex. Crim. App. 2006)).

The standard of review for ineffective assistance claims was set out in *Strickland*. *See Strickland*, 466 U.S. at 687; *Hernandez v. State*, 726 S.W.2d 53, 57 (Tex. Crim. App. 1986) (adopting *Strickland* two-prong test). In order for appellant to succeed on an

ineffective assistance of counsel claim, appellant must satisfy the two prongs of *Strickland*: appellant must show (1) counsel's representation fell below an objective standard of reasonableness; and (2) the deficient performance prejudiced the defense. *Lopez*, 343 S.W.3d at 142 (citing *Strickland*, 466 U.S. at 689); *see also Moreno v. State*, 1 S.W.3d 846, 864 (Tex. App.—Corpus Christi 1999, pet. ref'd). In order to satisfy the first prong, appellant must prove by a preponderance of the evidence that trial counsel's performance fell below "an objective standard of reasonableness under the prevailing professional norms." *Lopez*, 343 S.W.3d at 142. To satisfy the second prong, appellant must show there is a reasonable probability, or a probability sufficient to undermine the confidence in the outcome, that but for counsel's deficient performance, the result of the proceeding would have been different. *See id.*; *Moreno*, 1 S.W.3d at 864 (citing *Strickland*, 466 U.S. at 694).

Our review of counsel's performance is highly deferential; there is a strong presumption that counsel's performance fell within the wide range of reasonably professional assistance. *Lopez*, 343 S.W.3d at 142 (citing *Robertson*, 187 S.W.3d at 483); *Moreno*, 1 S.W.3d at 865. This means that we also "employ a strong presumption that counsel's conduct constitutes sound trial strategy." *Moreno*, 1 S.W.3d at 865 (citing *Strickland*, 466 U.S. at 689; *Miniel v. State*, 831 S.W.2d 310, 323 (Tex. Crim. App. 1992) (en banc)). The record must contain evidence of counsel's reasoning, or lack thereof, to rebut that presumption. *Id.* (citing *Jackson v. State*, 877 S.W.2d 768, 771 (Tex. Crim. App. 1994)); *see also Lopez*, 343 S.W.3d at 143 (requiring a showing that no reasonable trial strategy could justify trial counsel's acts or omissions); *Ortiz v. State*, 93 S.W.3d 79, 88–89 (Tex. Crim. App. 2002) (en banc) ("If counsel's reasons for his conduct do not appear in the record and there is at least the possibility that the conduct could have been legitimate trial

18

strategy, we will defer to counsel's decisions and deny relief on an ineffective assistance claim on direct appeal."). "When such direct evidence is not available, we will assume that counsel had a strategy if any reasonably sound strategic motivation can be imagined." *Lopez*, 343 S.W.3d at 143 (citing *Garcia v. State*, 57 .S.W.3d 436, 440 (Tex. Crim. App. 2001)).

## B. Discussion

Appellant's first ineffective assistance claim is premised on an assumption that the trial court's jury charge included "fundamental flaws" and that his trial counsel should have objected to the flawed definitions and instructions. The trial court, however, did not commit error in tracking the language of the Texas Penal Code. *See Martinez*, 924 S.W.2d at 699. It therefore follows that appellant's trial counsel did not perform so far below the objective standard of reasonableness that a different trial result is a reasonable probability.

Appellant's other ineffective assistance claims include a purported failure to request notice of the State's intent to offer evidence of an extraneous crime or bad act that had not previously resulted in a final conviction, obtain rulings on motions, request hearings, or otherwise object to the admissibility of extraneous-offense evidence.[8] We address this issue chronologically, beginning with pre-trial events and then addressing what happened at appellant's trial.

First, before appellant retained trial counsel, he was represented by multiple court-appointed attorneys. One of those attorneys sent a "standard demand" for discovery to the State and filed a copy with the trial court. The demand requested, among other

---

[8] *See Grant v. State*, 345 S.W.3d 509, 512 (Tex. App.—Waco 2011, pet. ref'd) ("As a prerequisite to presenting a complaint on appeal, a party must have made a timely and specific request, objection, or motion to the trial court.").

things, "[t]he criminal history of defendant, as known to the prosecution, together with all other crimes, wrongs and acts, intended for use pursuant to Texas Rule of Evidence 404(b), of which the prosecution has actual knowledge . . . ." Appellant nevertheless argues that his *trial counsel* should have filed some kind of motion or demand or sought some court order to secure notice from the State of its intent to introduce extraneous-offense evidence.

Appellant cites no case authority, and we find none, supporting the requirement that trial counsel, when different than previously appointed counsel, should file or seek a new notice for extraneous-offense evidence to supplement a previously given request from a different attorney.[9] In addition, to satisfy *Strickland*, appellant must show that a ruling on the motion probably would have changed the outcome of the case. *See Jackson v. State*, 973 S.W.2d 954, 957 (Tex. Crim. App. 1998) (en banc) (citing *Roberson v. State*, 852 S.W.2d 508, 510–12 (Tex. Crim. App. 1993) (en banc)). Based on trial counsel's awareness of the extraneous-offense evidence, as seen in counsel's preemptive attempts to exclude it by objecting when testimony began to drift toward the extraneous evidence,[10] it

---

[9] To the extent that appellant advocates imbedding a request for notice in a motion directed to the court rather to opposing counsel, we note that such a strategy could actually fail to trigger the State's responsibility to provide the notice absent the court's ruling on the motion. *See Espinosa v. State*, 853 S.W.2d 39, 39 (Tex. Crim. App. 1993) (en banc).

[10] For example, when M.S.'s mother's testimony began to drift towards events that transpired after M.S. was fourteen, appellant's attorney objected:

> He's getting into, I guess, what's considered 404(b) evidence, extraneous acts or crimes. This happened after, you know, the alleged time period; and I don't believe it's relevant. I know the event. I don't believe it's relevant to prove during the time period or 6 months before.
>
> . . . .
>
> I'd like to raise it now because I do believe that he's getting ready to show this Braxton person, she believes, is my client, that he had given her some gifts; and that goes to the fact of her relationship that they had during November of '09. So, I mean, this is the start of it and I want to raise that objection right now . . . .

does not appear that trial counsel required additional notice of the State's intent to use extraneous-offense evidence. Accordingly, appellant has not shown that a ruling on the motion would have changed the outcome of the case. Separately, trial counsel's awareness suggests that there was no prejudice to appellant's case by not having a new request for notice. Appellant's contention satisfies neither *Strickland* prong.

Second, appellant asserts that his trial counsel inadequately objected to extraneous-offense evidence at trial. Specifically, appellant suggests that trial counsel should have filed a motion in limine to exclude evidence of his relationship with M.S. with respect to the time period after she was fourteen years of age. In addition, appellant asserts that trial counsel should have more strongly objected to the admission of the photographs and requested a balancing test on those photographs pursuant to Texas Rule of Evidence 403.

It is true that appellant's trial counsel did not file a motion in limine to exclude the extraneous-offense evidence. However, "[t]he mere failure to file appropriate pretrial motions may not be categorically deemed ineffective assistance of counsel." *Miranda v. State*, 993 S.W.2d 323, 327 (Tex. App.—Austin 1999, no pet.) (citing *Ryan v. State*, 937 S.W.2d 93, 104 (Tex. App.—Beaumont 1996, writ ref'd); *Hills v. State*, 867 S.W.2d 852, 857 (Tex. App.—Houston [14th Dist.] 1993, writ ref'd)). In fact, "counsel may decide not to file

---

The court overruled the objection.

Later, when Officer Curl mentioned evidence from the same event, appellant's counsel again objected: "I'm going to object to the solicitation of this event as being an extraneous event that has nothing to do with the time period in question. It's seven months later. I just don't think it's relevant . . . ." The court, again, overruled the objection "under Rule 404." The court also conducted a rule 403 balancing test and determined that the probative value of the evidence was not substantially outweighed by the danger of unfair prejudice.

pre-trial motions as part of his trial strategy."[11]  *Mares v. State*, 52 S.W.3d 886, 891 (Tex. App.—San Antonio 2001, pet. ref'd).

Here, the record does not contain any evidence of appellant's trial counsel's strategy on this point.[12]  Accordingly, we are constrained to presume that the counsel's performance was effective.  *See Lopez*, 343 S.W.3d at 143; *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999); *see also Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005) (holding that in cases where the record is silent as to the trial counsel's reasoning, the appellate court should find ineffective assistance only if the challenged conduct is so outrageous that no competent attorney would have engaged in it); *Dominguez v. State*, No. 13-10-00493-CR, 2012 Tex. App. LEXIS 6146, at *25–26 (Tex. App.—Corpus Christi Jul. 26, 2012, no pet.) (mem. op., not designated for publication) (same).

As with pre-trial motions, a counsel's trial strategy regarding whether and when to object receives high deference where the record contains no evidence of counsel's strategy. *See Thompson*, 9 S.W.3d at 813–14; *Garza v. State*, No. 13-11-00621-CR, 2012 Tex. App. LEXIS 6865, at *8–9 (Tex. App.—Corpus Christi Aug. 16, 2012, no pet.) (mem. op., not

---

[11]  For example, "counsel may have determined that the evidence was admissible or may have surmised that constant objections to this evidence would draw unfavorable attention to this information." *Garza v. State*, No. 13-11-00621-CR, 2012 Tex. App. LEXIS 6865, at *9 (Tex. App.—Corpus Christi Aug. 16, 2012, no pet.) (mem. op., not designated for publication).

[12]  As the Texas Court of Criminal Appeals noted, "[G]enerally a claim of ineffective assistance of counsel may not be addressed on direct appeal because the record on appeal is usually not sufficient to conclude that counsel's performance was deficient." *Andrews v. State*, 159 S.W.3d 98, 103 (Tex. Crim. App. 2005).  Given that "[t]he reasonableness of counsel's choices often involve facts that do not appear in the appellate record," "[a] petition for writ of habeas corpus usually is the appropriate vehicle to investigate ineffective-assistance claims." *Mitchell v. State*, 68 S.W.3d 640, 642 (Tex. Crim. App. 2002) (en banc). Indeed, "[i]n most ineffective[-]assistance claims, a writ of habeas corpus is essential to gathering the facts necessary to adequately evaluate such claims." *Ex parte Torres*, 943 S.W.2d 469, 475 (Tex. Crim. App. 1997); *see also Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999) ("A substantial risk of failure accompanies an appellant's claim of ineffective assistance of counsel on direct appeal.  Rarely will a reviewing court be provided the opportunity to make its determination on direct appeal with a record capable of providing fair evaluation of the merits of the claim . . . .").

designated for publication).  Moreover, to establish ineffective assistance for not properly objecting to extraneous evidence, appellant must show that the trial court would have committed error in overruling the objection.  *See Ex Parte White*, 160 S.W.3d 46, 53 (Tex. Crim. App. 2004).  Applied here, even if we were to assume that trial counsel was not as assertive in his objections as another attorney may have been,[13] we cannot conclude from the record that trial counsel's actions were so outrageous that no competent attorney would have engaged in them.  *See Roberts v. State*, 220 S.W.3d 521, 533 (Tex. Crim. App. 2007). We overrule appellant's third issue.

## V.  CONCLUSION

We affirm the trial court's judgment.

_____
GREGORY T. PERKES
Justice

Do not publish.   TEX. R. APP. P. 47.2(b).

Delivered and filed the
3rd day of January, 2013.

---

[13]  Although appellant avers that trial counsel failed to object to extraneous-offense evidence, the record actually reflects several instances where his attorney attempted through objection to exclude evidence of the relationship that occurred after M.S. was fourteen.  *See supra* note 9.  In addition to previously discussed objections, appellant's counsel objected to the admission of the photographs that had been taken "outside the dates alleged in the indictment."  Counsel objected to other photographs on other grounds.