

NUMBERS 13-11-00617-CR & 13-11-00618-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

**GERALD FRANCIS GRAVES, JR.**                                    **Appellant,**

**v.**

**THE STATE OF TEXAS,**                                    **Appellee.**

### On appeal from the 377th District Court
### of Victoria County, Texas.

# MEMORANDUM OPINION

**Before Chief Justice Valdez and Justices Benavides and Longoria
Memorandum Opinion by Justice Benavides**

Appellant, Gerald Francis Graves, was convicted on three counts of aggravated sexual assault of a child and two counts of indecency with a child. *See* TEX. PENAL CODE ANN. § 22.021(a)(1)(B), § 21.11 (West Supp. 2011). The trial court sentenced Graves to life in prison on the three counts of aggravated sexual assault, twenty years for

the first count of indecency with a child, and ten years on the second count of indecency with a child. *See id.* §§ 12.32, 12.33 (West Supp. 2011). In four issues, Graves argues on appeal that: (1) the State engaged in prosecutorial misconduct when it created and aired a campaign commercial referencing Graves's case; (2) his right to retain counsel was violated when he was placed in a position where he could not afford his counsel of choice; (3) he received ineffective assistance of counsel when his court-appointed attorney failed to file a motion to transfer venue; and (4) the trial court erred in not transferring venue sua sponte. We affirm.

## I. BACKGROUND

In December of 2009, T.S., a fourteen-year-old boy at the time of trial, and his twelve-year old sister T.G., outcried to their foster and adoptive mothers, respectively, that Graves had sexually abused them when they were younger. Graves was the former boyfriend of T.S.'s and T.G.'s birth mother, S.S.[1] Graves frequently babysat the children before they were removed from their mother's custody.

In June 2010, Graves was indicted for three counts of aggravated sexual assault of a child and two counts of indecency with a child. *See* TEX. PENAL CODE ANN. § 22.021(a)(1)(B), § 21.11. After Graves's indictment but prior to his trial, Victoria County had a hotly contested D.A.'s race between former Assistant District Attorney Deborah Branch and the incumbent District Attorney Steve Tyler. From October 27, 2010 to November 1, 2010, the following campaign radio advertisement was aired:

Dragnet musical introduction

---

[1] We use initials for the mother to protect the identities of the minor children. *See* TEX. R. APP. P. 9.8(b)(1)(B) (providing that "the court may order that a minor's parent or other family member be identified only by an alias if necessary to protect a minor's identity.").

(Announcer's voice)   From the Victoria Justice Files:   the case of Gerald Graves, a/k/a the Pet Shop Pedophile.   He was arrested for indecency with a young girl in a pet store on May 13th, 2000 and charged.   Then assistant D.A. Deborah Branch put the Pet Shop Pedophile on deferred probation and back on our streets.

In 2005, he was charged with sexually assaulting another child, but Deborah Branch dismissed both the probation violation and new charges without explanation, despite a counselor's report that Graves was a dangerous sex offender.   Earlier this year, Victoria County Sheriff's deputies filed four new child sex abuse cases against the Pet Shop Pedophile, and Steve Tyler's office will take these cases to trial in December.   (Sound of prison bars closing).

(Incumbent D.A.'s voice).   I'm Steve Tyler, and for our families to be safe, we can't go back to the catch-and-release policies of the past that put dangerous criminals and predators back in our community.   So when you vote for D.A., ask yourself, do you want a guard dog who bites the bad guys, or a lap dog who just barks?"   (Announcer's voice).   Political advertisement paid for by the Tyler for D.A. Campaign.

The underlying case went to trial on July 11, 2011.   During jury selection, the prosecutor asked venire members the following:   "Has anyone heard any publicity in this case, either on TV, on the radio, or in the newspaper?   Just has anybody heard anything that would potentially affect them?   Anyone in the first row?"   Juror Number 5 responded that, "I just think I remember from the newspaper, but not recent or anything . . . I don't know.   I don't remember."   Juror Number 29 answered, "I remember hearing it, but I don't even remember much about it."   Both jurors stated that they could be fair and impartial during the trial.   No other venire member responded to the inquiry.

At trial, T.S. testified that although Graves bought him and his sister meals, pets, toys, and electronics, Graves would often condition his gifts with sexual favors.   For example, if T.S. needed help advancing to a new level on a video game, Graves would make T.S. masturbate him with lotion or perform oral sex on him before he would help

3

him with the game. T.S. also admitted that Graves sodomized him. T.G. testified that Graves made her masturbate him with a "medicine" or lotion, as well. T.S. reported that although he told his birth mother S.S. about the sexual abuse, she allowed it to continue because Graves provided her with financial assistance.

The jury found Graves guilty of three counts of aggravated sexual assault of a child and two counts of indecency with a child. *See* TEX. PENAL CODE ANN. § 22.021(a)(1)(B), § 21.11. He was sentenced to life in prison on the three counts of aggravated sexual assault, twenty years for the first count of indecency with a child, and ten years on the second count of indecency with a child. *See id.* §§ 12.32, 12.33. This appeal followed.

## II. ANALYSIS

### A. Prosecutorial Misconduct

In his first issue, Graves argues that the State engaged in prosecutorial misconduct when it created and aired its "Pet Shop Pedophile" commercial. According to Graves, the airing of this commercial "decimated [his] presumption of innocence" and affected his due process rights.

### 1. Applicable Law and Standard of Review

The Texas Court of Criminal Appeals has "never established a general test for all types of prosecutorial misconduct." *Stahl v. State*, 749 S.W.2d 826, 830 (Tex. Crim. App. 1988). Instead, it has examined these alleged claims on a case by case basis. *Id.* In most cases alleging prosecutorial misconduct, though, courts conduct a three-part analysis to evaluate the harmful conduct. *Id.* at 831 (citing *Landry v. State*, 706 S.W.2d 105, 111 (Tex. Crim. App. 1985)). First, the court verifies whether "the

4

defendant objected to the conduct of the prosecutor[s]." *Id.* Second, the court determines if the prosecutors were deliberately violating an express court order. *Id.* Third, the court evaluates whether the prosecutorial misconduct was "so blatant as to border on being contumacious." *Id.* This test is a "starting point for identifying reversible conduct." *Id.*

"Error preservation is not required only when the misconduct 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Jimenez v. State*, 240 S.W.3d 384, 402 (Tex. App.—Austin 2007, no pet.) (citing *Darden v. Wainwright*, 477 U.S. 168, 181 (1986)). "It is not enough that the prosecutors' remarks were undesirable or even universally condemned." *Id.* The misconduct must deny the defendant a fair trial. *See id.* "In other words, prosecutorial misconduct does 'not assume constitutional dimension unless the evidence is so insubstantial that (in probability) but for the remarks no conviction would have occurred.'" *Id.* (citing *Guidroz v. Lynaught*, 852 F.2d 832, 838 (5th Cir. 1988)).

**2.    Analysis**

In his brief, Graves asserts that the pretrial publicity generated by the "Pet Shop Pedophile" ad "infected" his right to a fair trial and denied him due process. However, Graves concedes that he did not object to the "Pet Shop Pedophile" commercial on the basis of prosecutorial misconduct. Although he filed motions objecting to the pre-trial publicity garnered because of the radio advertisements, the complaint he makes now regarding the State's alleged misconduct does not comport with the complaint he made before the trial court.[2] "Grounds of error urged on appeal must comport with the

---

[2]    Graves's first counsel, W.A. (Bill) White, objected to the pre-trial publicity in a motion entitled,

objections made at trial or error is not preserved." *Denision v. State,* 651 S.W.2d 754, 762 (Tex. Crim. App. 1983). Accordingly, we conclude that this issue was not preserved for review.

Graves, though, urges us to look beyond this analysis. He argues that the radio advertisements were so inflammatory that they deprived Graves of his constitutional right to a fair trial, and that error preservation was not required. *See Jimenez,* 240 S.W.3d at 402. We disagree. During voir dire, only two venire members vaguely recalled the advertisement, and neither person could recall the specifics of what the commercial relayed. In addition, both persons testified that they could be fair and impartial when listening to the evidence. We therefore hold that error, if any, was harmless. *See* TEX. R. APP. P. 44.2. The "prosecutorial misconduct" Graves alleges was insubstantial and did not affect Graves's conviction. *Id.* We overrule Graves's first issue.

## B. Right to Retain Counsel

In his second issue, Graves argues that the airing of the "Pet Shop Pedophile" advertisement prevented him from having his choice of counsel. Graves privately retained his first attorney, W.A. (Bill) White. Prior to trial, White filed a motion to withdraw because Graves could not afford the expenses related to filing a motion to transfer venue due to the pretrial publicity, hiring a private investigator to interview Victoria County residents who had heard the claimed offensive commercial, designating an expert, and proceeding with trial in a different county (which would add hotel, food, and transportation expenses). Attorney White, in his motion, asked the court to appoint him as counsel. In his motion, White stated that, "current retained counsel is ready,

---

"Defense Counsel's Motion to Withdraw as Retained Counsel and Defendant's Motion for Court-Appointed Counsel."

willing, and able to be appointed in these causes as counsel to maintain defensive continuity in order to preserve defendant's constitutional right to an effective defense." However, the trial court appointed a different attorney, Luis Martinez. He subsequently then appointed another attorney, Keith Weiser, to assist Martinez when Martinez suffered a health problem near the time of trial.

## 1. Applicable Law and Standard of Review

The United States and Texas Constitutions guarantee a defendant in a criminal proceeding the right to have assistance of counsel. *Gonzalez v. State*, 117 S.W.3d 831, 836 (Tex. Crim. App. 2003) (citing U.S. CONST. amend. VI; TEX. CONST. art. I § 10; TEX. CODE CRIM. PROC. art. 1.05 (West 2001)). "The right to assistance of counsel contemplates the defendant's right to obtain assistance from counsel of the defendant's choosing." *Id.* at 836–37. "However, the defendant's right to counsel of choice is not absolute." *Id.* at 837 (citing *Wheat v. United States*, 486 U.S. 153, 159 (1988)). "A defendant has no right to an advocate who is not a member of the bar, an attorney he cannot afford or who declines to represent him, or an attorney who has a previous or ongoing relationship with an opposing party." *Id.*

Appointment of new counsel, however, is a matter solely within the discretion of the trial court. *Solis v. State*, 792 S.W.2d 95, 100 (Tex. Crim. App. 1990); *see King v. State*, 29 S.W.3d 556, 566 (Tex. Crim. App. 2000). "A defendant does not have the right to choose appointed counsel." *Maes v. State*, 275 S.W.3d 68, 71 (Tex. App.—San Antonio 2008, no pet.); *see Renfro v. State*, 586 S.W.2d 496, 499–500 (Tex. Crim. App. [Panel Op.] 1979). "Texas courts have specifically held that an indigent defendant does not have a right to the counsel of his own choosing." *Trammell v. State*, 287 S.W.3d

336, 343 (Tex. App.—Fort Worth 2009, no pet.). "A trial court has no duty to search for counsel agreeable to the defendant." *King*, 29 S.W.3d at 566.

## 2. Analysis

In the underlying case, the trial court had no duty to appoint White to continue to serve as Graves's counsel. *See id.* The trial court, instead, appointed attorney Martinez. Later, when Martinez was reportedly suffering from ill health, the trial court appointed Keith Weiser to assist Martinez in Graves's defense should Martinez be unable to do so. Based upon a review of the law and the record, we cannot say that the trial court abused its discretion when it appointed attorneys other than White to represent Graves. *See Solis*, 792 S.W.2d at 100; *King*, 29 S.W.3d at 566. Under Texas law, Graves, as an indigent, did not have the right to choose which attorney could be appointed to represent him in his case. *See Maes*, 275 S.W.3d at 71. We overrule this issue.

## C. Ineffective Assistance of Counsel

In his third issue, Graves argues that his attorney provided ineffective assistance by failing to file a motion to transfer venue in light of the "Pet Shop Pedophile" radio advertisements.

## 1. Applicable Law and Standard of Review

To prevail on an ineffective assistance of counsel claim, appellant must show that (1) counsel's representation fell below an objective standard of reasonableness, and (2) the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 689 (1984); *Lopez v. State*, 343 S.W.3d 137, 142 (Tex. Crim. App. 2011). Our review of counsel's representation is highly deferential, and we will find ineffective

8

assistance only if appellant rebuts the strong presumption that his counsel's conduct fell within the wide range of reasonable professional assistance. *Strickland*, 466 U.S. at 689; *Lopez*, 343 S.W.3d at 142. The record must contain evidence of counsel's reasoning, or lack thereof, to rebut the presumption. *See Moreno v. State*, 1 S.W.3d 846, 865 (Tex. App.—Corpus Christi 1999, pet. ref'd). We review the totality of representation rather than isolated instances in determining whether trial counsel was ineffective. *See Robertson v. State*, 187 S.W.3d 475, 483 (Tex. Crim. App. 2006).

**2.    Analysis**

Graves argues that his counsel's failure to file a motion to transfer venue constituted ineffective assistance because the airing of the "Pet Shop Pedophile" commercial during campaign elections precluded him from having a fair and impartial jury. The record is silent on Graves's attorney's decision not to file a motion to transfer venue. Because our review of Graves's attorney's performance must be highly deferential, we presume that this decision constituted reasonable performance. *Strickland*, 466 U.S. at 689; *Lopez*, 343 S.W.3d at 142.

Further, Graves cannot show that, "but for" the filing of the motion to transfer venue, he would not have been convicted. There was substantial testimonial evidence, including evidence from both of the minor victims, detailing Graves's commission of the offenses. Further, only two members of the venire vaguely recalled the radio commercial, and both stated that they could be fair and impartial during the pendency of the trial. None of the other persons impaneled were aware of or could recall the "Pet Shop Pedophile" radio advertisement. Accordingly, Graves has not met his burden to prove that the failure to file a motion to transfer venue prejudiced his case. We overrule

9

his third issue.

**D.      Sua Sponte Transfer of Venue**

In his fourth and final issue, Graves argues that the trial court erred in failing to sua sponte transfer the venue of the case to a different county.

**1.      Applicable Law and Standard of Review**

Texas Code of Criminal Procedure article 31.01 provides as follows:

> Whenever in any case of felony or misdemeanor punishable by confinement, the judge presiding shall be satisfied that a trial, alike fair and impartial to the accused and to the State, cannot, from any cause, be had in the county in which the case is pending, he may, upon his own motion, after due notice to accused and the State, and after hearing evidence thereon, order a change of venue to any county in the judicial district in which such county is located or in an adjoining district, stating in his order the grounds for such change of venue. The judge, upon his own motion, after ten days notice to the parties or their counsel, may order a change of venue to any county beyond an adjoining district; provided, however, an order changing venue to a county beyond an adjoining district shall be grounds for reversal if, upon timely contest by the defendant, the record of the contest affirmatively shows that any county in his own and the adjoining district is not subject to the same conditions which required the transfer.

TEX. CODE CRIM. PROC. ANN. art. 31.01 (West 2006).

**2.      Analysis**

Based on the facts of this case, we cannot say that the trial court erred by not sua sponte transferring the venue of this case.   The alleged offensive commercials were aired a full ten months prior to trial.   Only two members of the jury panel could recall that a commercial was aired, but did not remember any discerning details about the advertisement.   Both members testified that they could be fair and impartial if chosen to be a part of the jury.   None of the other venire persons admitted that they were aware of any pretrial publicity.   Finally, the record is unclear as to whether either of these persons was made a final member of the jury.

10

In light of the foregoing, we overrule this issue.

### III. Conclusion

Having overruled all of Graves's issues, we affirm the trial court's judgments.

_____

GINA M. BENAVIDES,
Justice

Do not publish.
Tex. R. App. P. 47.2 (b).

Delivered and filed the
27th day of June, 2013.