**Opinion filed September 12, 2019**



In The

# Eleventh Court of Appeals

_____

## No. 11-17-00264-CR

_____

## RYAN CARTER, Appellant

## V.

## THE STATE OF TEXAS, Appellee

**On Appeal from the 161st District Court**

**Ector County, Texas**

**Trial Court Cause No. B-44,752**

## M E M O R A N D U M   O P I N I O N

The jury convicted Appellant, Ryan Carter, of capital murder and assessed his punishment at life imprisonment without parole. Appellant brings three issues on appeal. In his first issue, Appellant contends that the trial court erroneously admitted certain autopsy photographs of the victim. In his second issue, Appellant asserts that the trial court erred by allowing the State to make an improper jury argument. In his

third issue, Appellant argues that the trial court erred when it gave an improper definition and application paragraph in the jury charge. We affirm.

*Background Facts*

Appellant was charged by indictment with the capital murder of Maikil Maduok. The indictment alleged that Appellant "intentionally cause[d] the death of [Maduok], by stabbing him with a deadly weapon, to-wit: a knife, [while Appellant was] in the course of committing or attempting to commit the offense of robbery of Maikil Maduok or Angelina Garang."

At trial, Maduok's wife, Angelina Garang, testified for the State. Garang testified that, during the late-night hours of February 19, 2015, she and Maduok went to drop off their car at a glass repair shop in Ector County. They drove in separate cars and planned to drive home together. After they arrived, Maduok got out of his car to check where he could lawfully park the car; Garang stayed inside her car. During this time, Garang noticed Appellant approaching Maduok. Garang explained that Appellant was carrying a gun and repeatedly demanded money. Garang called 9-1-1 while inside her car.

Garang testified that, in response to Appellant's demands and as Appellant pointed his gun at Maduok, a struggle ensued between Maduok and Appellant. Maduok quickly grabbed Appellant, caused Appellant to hit the ground, and got on top of Appellant. Garang stated that Appellant still had the gun in his hand as Maduok struggled to keep Appellant down. Garang then discarded her phone and went to help Maduok. Garang testified that Appellant told Maduok: "[M]-----f----r, I need f-----g money. Get your f-----g face off me." According to Garang, Appellant also said: "[M]-----f----r, I'm not going to let you go nowhere" and "I need that f-----g money, you'd better give me that f-----g money." Garang eventually got on the

2

ground and pulled the gun away from Appellant. Garang then returned to her car, threw the gun inside, and went back to assist Maduok.

When Garang returned, Appellant was still fighting with Maduok; at this point, they were both standing up. Garang testified that Appellant said: "[G]ive me my gun." Garang then saw Appellant strike Maduok with what she believed was Appellant's hand, and Maduok then fell to the ground. Appellant then started to run away, and Garang ran after him. Appellant was apprehended by a good Samaritan. Garang testified that, during Appellant's encounter with the good Samaritan, Appellant told him: "[M]-----f----r, I will, I will stab you. . . . I will stab you with the knife."

Garang stated that, after Appellant was stopped, she returned to Maduok. Garang noticed that Maduok had not moved and had not said anything. Garang also noticed a pool of blood forming around Maduok. The evidence showed that, when Garang saw Appellant strike Maduok, Appellant had fatally stabbed Maduok in the neck with a knife. Law enforcement arrived shortly thereafter and arrested Appellant.

Dr. Susan Roe, a deputy medical examiner, performed an autopsy on Maduok. At trial, Dr. Roe testified about Maduok's injuries and the manner and cause of death. Dr. Roe used several photographs of Maduok's autopsy to help the jury understand her testimony. According to Dr. Roe, the autopsy revealed a knife embedded into the left side of Maduok's neck; the blade of the knife was "all the way in." Dr. Roe explained that the knife blade "went into various structures of the neck, and through the area of the vertebral column and the spinal column." Dr. Roe stated that it takes "some force" to inflict such injuries. Additionally, Dr. Roe noted that the spinal cord was transected and that an artery supplying blood to the brain was torn away. Dr. Roe opined that either injury would have been fatal. Dr. Roe

ultimately concluded that the manner of Maduok's death was homicide and that the cause of his death was a stab wound to the neck. Dr. Roe also testified that, given the many vital structures in the neck, if a person wanted to inflict a non-life-threatening injury upon someone, that person "wouldn't go for the vital areas."

After the admission of other evidence and witness testimony, the jury found Appellant guilty of capital murder as charged in the indictment. This appeal followed.

*Analysis*

In Appellant's first issue, he contends that the trial court erred when it admitted State's Exhibit Nos. 130 through 135, which were autopsy photographs of Maduok's internal injuries. According to Appellant, because the photographs were gruesome, had no probative value, and depicted mutilation of Maduok caused by the autopsy itself, they should have been excluded under Rule 403 of the Texas Rules of Evidence. We disagree.

At the outset, we note that Appellant did not object to the admission of State's Exhibit No. 135. As a result, Appellant failed to preserve his complaint regarding that exhibit for appellate review. *See* TEX. R. APP. P. 33.1(a); *Wilson v. State*, 71 S.W.3d 346, 349 (Tex. Crim. App. 2002). Accordingly, we will limit our analysis to State's Exhibit Nos. 130 through 134.

State's Exhibit No. 130 depicts Maduok lying on the examination table. The photograph focuses on the top of Maduok's exposed brain after the top of Maduok's scalp and skull had been removed. The photograph also shows extensive bleeding at the base of the brain near the entry wound. Additionally, State's Exhibit Nos. 131 through 134 depict, respectively: the remaining portion of Maduok's empty skull after the brain and eyes had been removed; a close-up of the inside of Maduok's skull showing damage caused by the knife; the base of Maduok's brain after it was

4

removed; and a close-up view of the end of the brain stem and the beginning of the spinal cord.

We review a trial court's decision to admit or exclude evidence for an abuse of discretion. *Torres v. State*, 71 S.W.3d 758, 760 (Tex. Crim. App. 2002); *see also Gallo v. State*, 239 S.W.3d 757, 762 (Tex. Crim. App. 2007) ("The admissibility of a photograph is within the sound discretion of the trial judge."). We will not reverse the trial court's ruling unless the ruling falls outside the zone of reasonable disagreement. *Torres*, 71 S.W.3d at 760. We will not disturb a trial court's evidentiary ruling if it is correct on any theory of law applicable to that ruling. *De La Paz v. State*, 279 S.W.3d 336, 344 (Tex. Crim. App. 2009).

Rule of Evidence 403 provides that relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice. TEX. R. EVID. 403. Rule 403 "favors the admission of relevant evidence and carries a presumption that relevant evidence will be more probative than prejudicial." *Gallo*, 239 S.W.3d at 762.

An analysis under Rule 403 includes the following: (1) how probative the evidence is; (2) the potential of the evidence to impress the jury in some irrational but nevertheless indelible way; (3) the time the proponent needs to develop the evidence; and (4) the proponent's need for the evidence. *See Shuffield v. State*, 189 S.W.3d 782, 787 (Tex. Crim. App. 2006). Furthermore, a number of additional factors may also be relevant in the analysis, including the number of photographs offered, their gruesomeness, their detail, their size, whether they are in color or black-and-white, whether they are close-up images, whether the body depicted is clothed or naked, the availability of other means of proof, and other circumstances unique to the individual case. *See Williams v. State*, 301 S.W.3d 675, 690 (Tex. Crim. App. 2009).

5

Autopsy photographs are relevant to show the manner and means of death. *Moreno v. State*, 1 S.W.3d 846, 857 (Tex. App.—Corpus Christi 1999, pet. ref'd). Autopsy photographs are generally admissible unless they depict only the mutilation caused by the autopsy itself. *Hayes v. State*, 85 S.W.3d 809, 816 (Tex. Crim. App. 2002). But mutilation caused during an autopsy is not necessarily fatal to the admissibility of the photograph when the photograph is highly probative of the medical examiner's findings and conclusions or when it allows the jury to see an internal injury. *Gallo*, 239 S.W.3d at 763 (concluding that the trial court did not err by admitting photographs of the decedent's rib, skullcap, and brain, all visible due to the decedent's autopsy, because they were necessary to show the injuries sustained).

Here, although all five photographs were in color and could be considered gruesome, autopsy photographs are often gruesome, and a trial court does not abuse its discretion by admitting such photographs when it would otherwise be difficult to show a victim's injury without altering the body in some way. *See Herrera v. State*, 367 S.W.3d 762, 777 (Tex. App.—Houston [14th Dist.] 2012, no pet.) (citing *Davis v. State*, 313 S.W.3d 317, 331 (Tex. Crim. App. 2010) (concluding that photograph of cross-sectioned tongue was admissible because it showed an injury that was not otherwise visible)).

The trial court could have concluded that the five photographs were probative of the nature of the crime and manner of death. Maduok's internal injuries could only be visible after manipulation during the autopsy. *See Harris v. State*, 661 S.W.2d 106, 108 (Tex. Crim. App. 1983) (concluding that the trial court did not err by admitting photograph of decedent's skull with skin deflected because it was necessary to show a skull fracture). Thus, we conclude that the trial court did not abuse its discretion by admitting the photographs of Maduok's autopsy. Based on

6

the record before us, we cannot say that the trial court abused its discretion by determining that the probative value of the photographs was not substantially outweighed by the danger of unfair prejudice to Appellant.

Even if the photographs were unduly prejudicial under Rule 403, we conclude that their admission was harmless error. The erroneous admission of evidence generally constitutes nonconstitutional error. *See Motilla v. State*, 78 S.W.3d 352, 355 (Tex. Crim. App. 2002). We must disregard a nonconstitutional error if it does not affect substantial rights. TEX. R. APP. P. 44.2(b). "A substantial right is affected when the error had a substantial and injurious effect or influence in determining the jury's verdict." *Schmutz v. State*, 440 S.W.3d 29, 39 (Tex. Crim. App. 2014). "[S]ubstantial rights are not affected by the erroneous admission of evidence 'if the appellate court, after examining the record as a whole, has fair assurance that the error did not influence the jury, or had but a slight effect.'" *Motilla*, 78 S.W.3d at 355 (quoting *Solomon v. State*, 49 S.W.3d 356, 365 (Tex. Crim. App. 2001)).

When we consider the weight of the other evidence admitted at trial, including additional photographs of Maduok's autopsy and the testimony of Garang, we conclude that the admission of State's Exhibit Nos. 130 through 134 did not unduly influence the jury in its decision. We overrule Appellant's first issue.

In his second issue, Appellant asserts that the trial court erred by allowing the State to make an improper jury argument. During closing arguments, the prosecutor argued that, when Appellant loaded his firearm, Appellant formed the intent to kill. To support this assertion, the prosecutor made the following statements: "Law enforcement officers, including myself, can carry weapons. And when we carry a weapon, and we load it, we have conformed [sic] the intent to kill. None of us want to kill, none of us plan to kill." Before the prosecutor could finish, Appellant's trial counsel objected. Appellant's trial counsel argued that testimony about the

7

prosecutor's own experience and experience of other police officers and what they intend was "completely out of the record." The trial court overruled the objection. The trial court then stated: "The jury will remember the evidence."

On appeal, Appellant argues that the prosecutor's challenged statements were not supported by the evidence. According to Appellant, "[n]o testimony in the record indicates that law enforcement officers form the intent to kill every time they take a loaded gun with them." Appellant also argues that the prosecutor's challenged statements do not fall within any of the four parameters of permissible closing arguments. As a result, Appellant asserts that the trial court erred when it overruled Appellant's objection to improper jury argument.

A trial court's ruling on an objection to improper jury argument is reviewed for abuse of discretion. *See Garcia v. State*, 126 S.W.3d 921, 924 (Tex. Crim. App. 2004). "Permissible jury argument falls into one of four areas: (1) summation of the evidence; (2) reasonable deduction from the evidence; (3) an answer to the argument of opposing counsel; or (4) a plea for law enforcement." *Gallo*, 239 S.W.3d at 767; *see Dukes v. State*, 486 S.W.3d 170, 183 (Tex. App.—Houston [1st Dist.] 2016, no pet.). To determine whether a party's argument properly falls within one of these categories, a reviewing court must consider a challenge to the closing argument in the context of the entire record, including the complete arguments of both parties. *Sandoval v. State*, 52 S.W.3d 851, 857 (Tex. App.—Houston [1st Dist.] 2001, pet. ref'd).

Assuming, without deciding, that the trial court erred when it overruled Appellant's objection, we conclude that the alleged error was harmless. An improper comment made in closing argument about matters outside the record is generally considered a nonconstitutional error. *Martinez v. State*, 17 S.W.3d 677, 692 (Tex. Crim. App. 2000). A nonconstitutional error that does not affect

8

substantial rights must be disregarded. TEX. R. APP. P. 44.2(b); *Martinez*, 17 S.W.3d at 692; *Mosley v. State*, 983 S.W.2d 249, 259 (Tex. Crim. App. 1998). To determine the harm of an improper jury argument, three factors are balanced: (l) the severity of the misconduct (the magnitude of the prejudicial effect); (2) curative measures (the efficacy of any cautionary instruction by the trial court); and (3) the certainty of the conviction in the absence of misconduct (the strength of the evidence that supports the conviction). *Martinez*, 17 S.W.3d at 692–93.

First, based on our review of the record, the severity of the misconduct was not unduly prejudicial. Appellant was charged with intentionally causing the death of Maduok by stabbing Maduok with a knife. As such, the prosecutor's isolated statement about whether loading a firearm constitutes an intent to kill was not directly related to the dispositive question of whether Appellant intended to kill Maduok when Appellant stabbed Maduok with a knife. Moreover, after Appellant's trial counsel objected to the prosecutor's argument, the prosecutor quickly abandoned the argument and did not mention the intent of himself or law enforcement again. The State's main focus during closing arguments was not on whether Appellant intended to kill Maduok when Appellant loaded his firearm, but whether Appellant intended to kill Maduok when Appellant stabbed him with a knife. The State argued at length that Appellant did possess such an intent when he stabbed Maduok, given the location where Appellant stabbed Maduok (the neck), the force Appellant used, and the extensive damage to the internal structures of Maduok's neck, including the severing of his spinal cord. The State also argued that Appellant could have escaped but chose not to. Additionally, the State emphasized Appellant's own testimony, where he testified: Maduok "was choking the life out of me. It was either me or him."

Second, we assess the efficacy of any curative measures taken by the trial court. First, we note that, after the trial court overruled the objection, the trial court stated: "The jury will remember the evidence." We also note that, after this instruction, the prosecutor clarified to the jury that his assertions were not evidence. Further, in the trial court's charge, the jury was instructed: "During your deliberations in this case, you must not consider, discuss, nor relate any matters not in evidence before you. You should not consider nor mention any personal knowledge or information you may have about any fact or person connected with this case which is not shown by the evidence." "Instructions to the jury are generally considered sufficient to cure improprieties that occur during trial." *Gamboa v. State*, 296 S.W.3d 574, 580 (Tex. Crim. App. 2009). We presume that a jury will follow the trial court's instructions. *Id.* Even if the trial court erred, there is nothing to suggest that the jury did not follow the instructions of the trial court.

Third, we note that Appellant's conviction was relatively certain even without the misconduct. Here, Garang testified that, in the process of attempting to rob Maduok, Appellant stabbed and killed Maduok. Dr. Roe testified that Maduok's spinal cord was transected and that an artery that supplied blood to the brain was torn away. The evidence showed that the knife belonged to Appellant and that Appellant was aggressive and combative during his encounter with Maduok. Dr. Roe also testified that "some force" was needed to cause the damage that occurred to the various structures in Maduok's neck and that targeting a person's neck was not something a person would do if that person wanted to inflict a non-life-threatening injury.

For these reasons, we conclude that any errors associated with the challenged statements were harmless. We overrule Appellant's second issue.

10

In his third issue, Appellant asserts jury-charge error. Specifically, Appellant appears to argue that the trial court erred because it gave an improper definition and application paragraph of murder in the jury charge. Appellant asserts that where, as here, the indictment charges a defendant with intentionally causing the death of a person, it is fundamental error to authorize conviction on a theory not alleged in the indictment.

The indictment in this case charged Appellant with capital murder. A person commits capital murder when (1) the person commits murder as defined under Section 19.02(b)(1)—which defines murder as "intentionally or knowingly caus[ing] the death of an individual"—and (2) "the person intentionally commits the murder in the course of committing or attempting to commit [among other felonies] robbery." TEX. PENAL CODE ANN. §§ 19.02(b)(1); 19.03(a)(2) (West 2019). Along with the proper definition of murder, as incorporated by the capital-murder statute, the jury charge included another definition of murder, which related to the lesser included offense of felony murder. The challenged definition of murder read:

> A person commits the offense of murder if he commits or attempts to commit a felony, other than manslaughter, and in the course of and in furtherance of the commission or attempt, or in immediate flight from the commission or attempt, he commits or attempts to commit an act clearly dangerous to human life that causes the death of an individual.

Based on this definition, which defines felony murder, Appellant complains that "the jury was permitted to consider that [Appellant] could have committed capital murder by committing an act clearly dangerous to human life in the course of committing a felony, rather than only by intentionally or knowingly causing the death of Mad[uo]k during the commission of a specific felony." According to Appellant, because this was fundamental error, "this Court has no choice but to reverse and remand for a new trial." We disagree.

"[A]ll alleged jury-charge error must be considered on appellate review regardless of preservation in the trial court." *Kirsch v. State*, 357 S.W.3d 645, 649 (Tex. Crim. App. 2012). In our review of a jury charge, we must first determine whether error occurred. *Id.* If no error occurred, our analysis ends. *Id.* But if error occurred, whether it was preserved then determines the degree of harm required for reversal. *Id.*; *see Barrios v. State*, 283 S.W.3d 348, 350 (Tex. Crim. App. 2009) (citing *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985)).

We conclude that the trial court did not err when it included the challenged definition and application paragraph of felony murder in the jury charge. First, we note that it was proper to include the definition of felony murder in the jury charge because felony murder is a lesser included offense of capital murder and because felony murder was included in the jury charge as a lesser included offense. *See Fuentes v. State*, 991 S.W.2d 267, 272 (Tex. Crim. App. 1999) ("The elements of felony murder [under Section 19.02(b)(3)] are included within the proof necessary for capital murder committed in the course of robbery [that is, Section 19.03(a)(2)]."); *see also Gomez v. State*, 499 S.W.3d 558, 562 (Tex. App.— Houston [1st Dist.] 2016, pet. ref'd) ("This Court has long held that murder is a lesser-included offense of capital murder." (quoting *Smith v. State*, 297 S.W.3d 260, 275 (Tex. Crim. App. 2009))).

Additionally, we note that the jury was not authorized to convict Appellant on a theory not alleged in the indictment. Rather, the jury convicted Appellant on the very theory alleged in the indictment. The jury found Appellant "guilty of the offense of Capital Murder, as charged in the Indictment." To convict Appellant of capital murder, the application paragraph in the jury charge, which tracked the language of the indictment, required the jury to find, beyond a reasonable doubt, that Appellant "intentionally cause[d] the death of" Maduok by stabbing him with a

deadly weapon (a knife) "in the course of committing or attempting to commit the offense of robbery" of Maduok or Garang. As such, there was no danger that the jury was permitted to convict Appellant of capital murder without finding that he intentionally caused Maduok's death. Therefore, we cannot conclude that the jury charge in this case was erroneous. We overrule Appellant's third issue.

*This Court's Ruling*

We affirm the judgment of the trial court.


KEITH STRETCHER

JUSTICE


September 12, 2019

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Bailey, C.J.,
Stretcher, J., and Wright, S.C.J.[1]

Willson, J., not participating.

---

[1]Jim R. Wright, Senior Chief Justice (Retired), Court of Appeals, 11th District of Texas at Eastland, sitting by assignment.